**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DESLY INTERNATIONAL CORPORATION; MARAT NOVIKOV; OLGA NOVIKOV; and ANDREY NOVIKOV,<br><br>                       Plaintiffs,<br><br>     v.<br><br>OTKRYTOE AKTSIONERNOE OBSHCHESTVO "SPARTAK" a/k/a SOVMESTNOE PREDPRIYATIE OTKRYTOE and a/k/a AKTSIONERNOE OBSHCHESTVO "SPARTAK"; EURO IMPORT DISTRIBUTIONS INC.; EURO IMPORT BEL LLC; EURO IMPORT INC.,<br><br>                    Defendants. | **Civ. A. No. 13-cv-02303-ENV-LB**<br><br>**DEMAND FOR JURY TRIAL** |

**SPARTAK'S RULE 56.1 STATEMENT OF MATERIAL FACTS
IN SUPPORT OF ITS MOTIONS FOR SUMMARY JUDGMENT OF
TRADEMARK OWNERSHIP, BREACH OF CONTRACT, AND
FALSE DESIGNATION OF ORIGIN UNDER LANHAM ACT AND
UNFAIR COMPETITION UNDER NEW YORK STATE LAW**

**John F. Ward** (JW 8012)
jward@wardzinna.com
**David G. Lindenbaum** (DL 1222)
dlindenbaum@wardzinna.com
**Hanna B. Mosolygo** (HM 0428)
hmosolygo@wardzinna.com
**WARD & ZINNA, LLC**
382 Springfield Avenue
Summit, New Jersey 07901
Phone: (908) 277-3333
Fax: (908) 277-6373

Dated: May 16, 2014                 *Attorneys for Defendant JV JSC Spartak*

Pursuant to Local Civil Rule 56.1, Defendant Sovmestnoe Predpriyatie Otkrytoe Aktsionernoe Obshchestvo "Spartak" (JV JSC Spartak) ("Spartak") submits the following material facts to which Spartak contends there is no genuine issue to be tried, in support of its Motions for Summary Judgment of Trademark Ownership, Breach of Contract, and False Designation of Origin Under Lanham Act and Unfair Competition Under New York State Law.

### A.    Spartak's 85 Year Reputation and SPARTAK Mark and SPARTAK Logo

1.    Spartak has been the leading manufacturer of high quality confectionery goods in Belarus for over 85 years.  Spartak's history dates back to 1924 when the Prosvet factory opened its doors in Gomel, Belarus. (Ms. Elena Nikolaevna Pilkevich Declaration dated May 13, 2014 ("Pilkevich Dec.") at ¶ 2).

2.    In 1931, Spartak was launched as a new venture at the Prosvet factory. Since that time, all confectionery goods produced by Spartak have been supplied, marketed, and sold under the trademark SPARTAK in Russian (Cyrillic) (hereinafter, the "SPARTAK Mark"). (Pilkevich Dec. ¶ 3; Ex. KK,[1] Elena Nikolaevna Pilkevich[2] Deposition Transcript dated December 5, 2013 ("Pilkevich Trans.") at 153:20-23; Ex. LL, Mikhail Bondarev[3] Deposition Transcript Dated December 4, 2013 ("Bondarev Trans.") at 53:5-7; Ex. OO, Alesia Samsonava[4] Deposition Transcript dated January 15, 2014 ("Samsonava Trans.") at 53:2-7).

---

[1] "Ex. __" refers to Exhibits A-JJ, attached to the Declaration of Elena Nikolaevna Pilkevich, and Exhibits KK-HHH, attached to the Declaration of John F. Ward, Esq., in support of Spartak's Motions for Summary Judgment.

[2] Ms. Pilkevich is currently employed by Spartak as a Financial Director, to whom the following departments report: Financial Department, Planning and Economics Department, Labor and Wages Department, Information Technology Services, and Marketing and Advertising Department.  She was first hired by Spartak in 1996, and worked in various departments at Spartak. From the end of 2001 through 2002, she worked as a specialist in Spartak's Marketing and Advertising Department. (Pilkevich Dec. ¶ 1).

[3] Mr. Bondarev was employed by Spartak in 1997 as chief of legal department. (Ex. LL, Bondarev Trans. 12:23-13:12).

[4] Ms. Samsonava was Spartak's General Director from June 2008 through October 2012. (Ex. OO, Samsonava Trans. 25:1-9).

3.      The transliteration of SPARTAK in Russian (Cyrillic) is "Спартак" in sentence case,

"СПАРТАК" in uppercase, and "*Спартак*" in cursive. (Ex. QQ, Desly's Response to Request

for Admission ("RRFA") Nos. 1-3).

4.      On April 16, 1968, Spartak received Registration No. 35379 for the SPARTAK Mark in

the USSR, with a priority date of July 25, 1967; and on August 28, 1989, Spartak received

Registration No. 86397 for the SPARTAK Mark in the USSR, with a priority date of January 12,

1989, both in class 30 for "confectionary goods".  (Pilkevich Dec. ¶ 4; copies of these

registrations are shown in Ex. A).

5.      Spartak registered the SPARTAK Mark in Russian (Cyrillic) and English in the Republic

of Belarus under: Registration No. 5591, dated 1/23/1997; Registration No. 7477, dated

11/24/1997; and Registration No. 17703, dated 9/4/2003, all in class 30 for "confectionary

goods".  (Pilkevich Dec. ¶ 5; copies of these registrations are shown in Ex. B).

6.      Spartak also received trademark registrations for the SPARTAK Mark throughout the

world: the Russian Federation (Registration No. 149588, dated 1/31/1997, in class 30 for

"candies, cookies, chocolate candies, chocolate goods, excluding chocolate drinks"; and

Registration No. 404754, dated 7/27/2004, in class 30 for "marzipan, almond paste, pastry

confectionery goods"); Tajikistan (Registration No. TJ 8267, dated 8/6/2009, in class 30 for

"flour and grain goods, baked goods, confectionary goods"); Kyrgyzstan (Registration No. 9079,

dated 10/31/2008, in class 30 for "flour and grain goods, baked goods, confectionary goods");

and Kazakhstan (Registration No. 28807, dated 4/15/2009, in class 30 for "flour and grain goods,

baked goods, confectionary goods").  (Pilkevich Dec. ¶ 6; copies of these registrations are shown

in Ex. C).

7.      All of the above registrations were issued to Spartak as the owner.  (Pilkevich Dec. ¶ 7;

Exs. A-C).

8.      In 1997, Spartak sold 17,916.84 kg (net weight) of confectionary goods to Redwood Corporation, and shipped them to Wilmington, Delaware. The packaging of all of the confectionary goods that were sold and shipped to Redwood Corporation in 1997 contained the SPARTAK Mark. (Pilkevich Dec. ¶¶ 44-45; a copy of Spartak's Waybill dated May 15, 1997 for that shipment is shown in Ex. T; screenshots from Spartak's computer system concerning that shipment and information about Redwood Corporation are shown in Ex. U; Ex. LL, Bondarev Tran. at 52:24-55:5).

9.      In 2001, Spartak began supplying products to the United States through Desly.  From 2001 through and until November 28, 2012, Spartak shipped to Desly finished products in packaging that displayed the SPARTAK Mark.  (Pilkevich Dec. ¶¶ 22 and 67; Ex. KK, Pilkevich Trans. 155:23-156:15).

10.     Some examples of true and correct copies of Spartak's product packaging that utilized the SPARTAK Mark before 2002 are illustrated in the attached Ex. D.  (Pilkevich Dec. ¶ 8; Ex. KK, Pilkevich Trans. 153:24-155:6).

11.     Since 1931, Spartak's products have been, continuously through to the present and without abandonment, extensively advertised, promoted, marketed, offered for sale, and sold in commerce under the SPARTAK Mark internationally, and since at least 1997 in the United States.  (Pilkevich Dec. ¶ 19).

12.     Before 2002, at least some of the confectionary goods Spartak provided to Desly for distribution in the United States were packaged in packaging printed with the logos  shown immediately below:



(hereinafter, "SPARTAK Pre-2002 Logos"; Pilkevich Dec. ¶ 46; images of these logos on pre-2002 confectionary goods are shown in Ex. D, SPTK-000218 and SPTK-000222; Ex. KK, Pilkevich Trans. 153:24-154:4, 154:19-155:6).

13.     The SPARTAK Pre-2002 Logo with the blue ribbons (the left image above) was developed by or on behalf of Spartak in the 1980's. The SPARTAK Pre-2002 Logo with the gladiator on the horse (the right image above) was developed on behalf of Spartak by a Belarusian advertising company, Tyro, in the 1990's.  Both SPARTAK Pre-2002 Logos are owned by Spartak.  (Pilkevich Dec. ¶¶ 47-48; a printout of Tyro's website showing the designs it created for Spartak is attached as Ex. EEE).

14.     On or about 2002, Spartak retained the services of Diena Prims Janu Nakts Ltd. ("DPJN") to update its logo and provided to DPJN the images of the SPARTAK Pre-2002 Logos.  (Pilkevich Dec. ¶¶ 49-50).

15.     On or about 2002, DPJN designed the SPARTAK logo in Russian (Cyrillic) and later in English shown immediately below based on the SPARTAK Pre-2002 Logos:

| SPARTAK Logo in English | SPARTAK Logo in Russian (Cyrillic) |
|---|---|
|  |  |

(hereinafter, collectively the "SPARTAK Logo"). (Pilkevich Dec. ¶ 51; Ex. KK, Pilkevich Trans. 152:18-20, 155:20-22; Ex. V, showing screenshots of DPJN's website of the SPARTAK Pre-2002 Logos labeled as "Client: Spartak | Project Spartak (Brand Pre-Refreshment)" and the SPARTAK Logo labeled as "Client: Spartak | Project: Spartak (Brand Post-Refreshment)").

16.     As shown below, the SPARTAK Logo incorporates the identical font in the same slope as Spartak's pre-2002 logo with the blue ribbons and identical head of Spartak's pre-2002 logo showing the gladiator on the horse:



| SPARTAK Logo | SPARTAK Pre-2002 Logos |
|---|---|

17.     DPJN transferred any intellectual property rights it may have had in the SPARTAK Logo to Spartak through the January 5, 2004 Design Development Agreement No. 116 between DPJN and Spartak, which stated in Section 5.7 that: "The Executor [DPJN] acknowledges the right of the CUSTOMER [Spartak] as the owner of the exclusive property rights to register Works as trademarks and other objects of industrial property, as well as to make claims and lawsuits against violators of the CUSTOMER's [Spartak's] rights." (Pilkevich Dec. ¶¶ 9-12, 52; a copy of the Design Development Agreement is shown in Ex. E; copies of the designs that were transferred by DPJN to Spartak per the Design Development Agreement are shown in Ex. F; invoices concerning these designs are shown in Ex. G).

18.     As illustrated below, the SPARTAK Logo is substantially similar to Spartak's other pre-2002 logos incorporating the SPARTAK Mark:

| SPARTAK Logo | Spartak's other logos before 2002 |
|---|---|
|  | |

(Ex. D, SPTK-000217 and SPTK-000219; Ex. KK, Pilkevich Trans. 153:24-154:4, 155:2-6).

19.     On April 13, 2009, the Republic of Belarus issued a Certificate of Recognition of the SPARTAK Logo as a well-known trademark.  The date at which the SPARTAK Logo is recognized as well known in the Republic of Belarus is December 31, 2002.  The Certificate of Recognition listed Spartak as the owner of the SPARTAK Logo.  (Pilkevich Dec. ¶ 13, a copy of the Certificate of Recognition is shown in Ex. H).

20.     On February 19, 2010, Spartak received Registration No. 32012 in the Republic of Belarus for the SPARTAK Logo based on an application filed on February 19, 2007, in class 30 for "coffee, tea, cacao, sugar, rice, tapioca (cassava), sago, coffee substitutes; flour and grain goods, baked goods, confectionery goods, ice cream; honey, syrup of molasses; yeast, baking powder; salt, mustard; vinegar, seasonings; spices; edible ice".  (Pilkevich Dec. ¶ 14; a copy of this registration is shown in Ex. I).

21.     Some examples of Spartak's product packaging that utilized the SPARTAK Logo in 2005 and 2006 are illustrated in Ex. SS.

22.     From 2002 through and until November 28, 2012, Spartak shipped to Desly finished products in packaging that displayed the SPARTAK Logo.  (Pilkevich Dec. ¶ 68; Ex. KK, Pilkevich Trans. 155:23-156:12).

23.     Since at least 2002, and continuously through to the present and without abandonment, Spartak extensively advertised, promoted, marketed, offered for sale, and sold its goods and

services in commerce, including in the United States, under the SPARTAK Logo.  (Pilkevich Dec. ¶ 20).

24.    Spartak also supplies its confectionery goods under the SPARTAK Mark and SPARTAK Logo in the U.S., Russia, Canada, Britain, Germany, Greece, Israel, the Czech Republic, Lithuania, Mongolia, Abkhazia, Kazakhstan, Azerbaijan and Ukraine.  (Pilkevich Dec. ¶ 15).

25.    Over the years, Spartak has been honored with numerous awards, prizes, and medals at specialized exhibitions for its confectionary goods supplied under the SPARTAK Mark and SPARTAK Logo: in 1998, Spartak was awarded a "Trade Oscar" as the most popular, and the best product in the Republic of Belarus and in 2011, Spartak was awarded a Diploma for use of intellectual property in order to improve the competitiveness of products by the National Intellectual Property Center in the Republic of Belarus.  At the most prestigious international exhibitions, Spartak's products received gold medals and diplomas, for example, at: "Peterfood / Worldfood 1999" in St. Petersburg; International Conference "Cakes and Pastries 2000" in Moscow; "Nizhny Novgorod Fair 2002" in Nizhny Novgorod, Russia; "Interfud-2003" in St. Petersburg; "Nizhny Novgorod Fair 2004" in Nizhny Novgorod, Russia; "World Food Moscow 2007" in Moscow; "Interfood Astana2007" in Astana, Kazakhstan; "ProdExpo 2009" in Moscow; and "World Food2012" in Moscow.  (Pilkevich Dec. ¶ 16; copies of these awards are illustrated in Ex. J).

26.    In 1999, to enhance the quality of its products, the management of Spartak developed a Quality Management System: a complex enterprise consisting of multilevel management, including the General Director, Deputy General Director of Production, Head of Central Laboratory of Production, Head of TCS (time/temperature control for food safety), and Heads of Production Departments, among others.  These parties are responsible for all levels of quality

management, including, for example, implementation of the quality policy, allocation of resources, laboratory testing of raw materials, inspection and testing of finished and semi-finished products, and obtaining appropriate registrations for acceptance of the finished products. (Pilkevich Dec. ¶ 17; Spartak's Corporate Standard of the Quality Management System is shown in Ex. S, SPTK-001417).

27.     On March 14, 2001, Spartak obtained a certificate of conformity from the Register of the National System of Certification affirming that Spartak's production of high-quality confectionaries corresponds to ISO 9001 standards published by the International Organization for Standardization.  Spartak has since maintained the ISO 9001 certification, which facilitates Spartak's integration with the international economy, and which was accredited by the United States.  (Pilkevich Dec. ¶ 18; Spartak's certifications are illustrated in Ex. K).

28.     Since at least as early as 2001, Spartak has utilized an Expert Art Committee as part of its Quality Management System and comprised of various heads of departments, to develop new varieties and types of confectionery products, improve the design of the products, develop products conforming to modern concepts of sensible nutrition for all groups of the population and products, determine new product names to satisfy the requests of customers, and improve the competitiveness of products.  (Pilkevich Dec. ¶ 72; a copy of Spartak's Corporate Standard of the Regulation on Expert Art Committee is shown in Ex. X, SPTK-001435-1436).

29.     Since at least as early as 2001, Spartak has employed culinary technologists and engineers to work on product development.  These employees regularly received training through seminars and conferences held all over the world, including Moscow, Italy, Germany, and Poland.  (Pilkevich Dec. ¶ 73; copies of Spartak's Orders directing its culinary technologists and engineers to attend various seminars are shown in Ex. Y).  For example, in 2004, Spartak's

technologists and engineers were trained on the preparation of chocolates by Engineer-Consultant Pierre Jean Paulet, a former Nestle employee. (Ex. Y, SPTK-001444-1445; Ex. OO, Samsonava Trans. 57:12-58:10).

30.     As a result of these efforts and expenditures, combined with substantial sales of confectionery goods under the SPARTAK Mark and SPARTAK Logo and Spartak's reputation for high quality products for over 85 years, the relevant consuming public in the United States has come to recognize the SPARTAK Mark and SPARTAK Logo as favorably distinguishing Spartak's confectionery goods from those of others.  Based on this extensive and prominent use, Spartak's well-known and distinctive SPARTAK Mark and SPARTAK Logo have acquired enormous value and have achieved widespread recognition and fame among the relevant public as a symbol of Spartak's goodwill and reputation as a leading provider of confectionary goods. (Pilkevich Dec. ¶ 21).

### B.     Desly's Unauthorized Activities

31.     Desly was incorporated on or about March 9, 2001.  (Ex. QQ, Desly's RRFA No. 4).

32.     On September 1, 2001, Spartak and Desly entered into a supply agreement for the distribution of Spartak's confectionery goods in the United States, and at that time Desly began distributing confectionery goods on behalf of Spartak in the United States.  (Pilkevich Dec. ¶ 22; Ex. KK, Pilkevich Trans. 155:23-156:15; Ex. NN, Olga Novikov[5] Deposition Transcript dated December 6, 2013 ("Olga Novikov Trans.") at 102:22-7).

33.     A copy of a representative supply agreement is shown in Ex. TT, entered into by Spartak and Desly on July 12, 2004.  None of the supply agreements entered by Spartak and Desly between September 1, 2001 through July 20, 2006 transferred any intellectual property rights,

---

[5] Olga Novikov, a Plaintiff in this case, is a partial owner and an assistant manager of Desly, who has never been employed by Spartak or owned any shares in Spartak. (Ex. NN, Olga Novikov Trans. 37:17-19, 45:6-10).

including the SPARTAK Mark and the SPARTAK Logo, from Spartak to Desly. (*See, e.g.,* Ex. TT).

34.     On July 21, 2006, Spartak and Desly entered into an Exclusive Distributor Agreement (hereinafter "Distribution Agreement") granting Desly the exclusive right to market and distribute confectionary goods manufactured by Spartak in the United States, South America and Canada, in packaging provided by Spartak bearing the SPARTAK Mark and SPARTAK Logo. (Pilkevich Dec. ¶ 23; a copy of the Distribution Agreement is shown in Ex. L).

35.     Section 2.4 of the Distribution Agreement, titled "The Right to Use Trademark and Trade Name", deals specifically with Spartak's trademark rights: [6]

> *Any and all trademarks* and trade names, which Owner [Spartak] uses in connection with the rights granted hereunder, are and *remain the exclusive property of Owner [Spartak]*. Nothing contained in this Agreement shall be deemed to give Distributor [Desly] any right, title or interest in any trademark or trade name of Owner [Spartak] relating to the Products. Subject to notice from Owner [Spartak] *in writing*, which modifies or cancels such authorization, during the term of this Agreement, Distributor [Desly] may use the trademarks and trade names specified by Owner [Spartak] *in writing* for normal advertising and promotion of Products.

(Ex. L, Section 2.4, emphasis added).

36.     Intellectual property rights are further addressed in Section 8.2 titled "Property Rights":

> Distributor [Desly] acknowledges and agrees that the Products and all copies thereof constitutes valuable trade secrets or proprietary and confidential information of Owner [Spartak]; that title thereto is and shall remain in Owner [Spartak]; and that *all applicable copyrights, trade secrets, patents and other intellectual property rights in the Products and all other items licensed hereunder are and shall remain in Owner [Spartak]*. All other aspects of the Products and all other items licensed hereunder including Remains the sole and exclusive property of Owner [Spartak] and shall not be sold, revealed, disclosed or otherwise communicated, directly or indirectly, by Distributor [Desly] to any person, company or institution whatsoever, other than for purpose set forth herein. It is expressly understood and agreed that no title to,

---

[6] In the Distribution Agreement, the term "Products" refers to "confectionery products manufactured by Owner [Spartak] and selected by Distributor [Desly] in such assortment and quantities as Distributor [Desly] shall deem appropriate and order from Owner [Spartak] in writing." (Ex. L, Section 1).

> or ownership of, the Owner's [Spartak's] intellectual property rights, or any
> part thereof, is hereby transferred to Distributor [Desly].

(Ex. L, Section 8.2, emphasis added).

37.     Section 7.4, titled "Prohibited Practices", defined the practices prohibited by Desly:

> Distributor [Desly] may not make any contacts or comments on behalf of
> Owner [Spartak] nor make any warranties or other representations regarding
> the Products other than those authorized herein or by Owner [Spartak] *in a
> separate writing*. The distributor [Desly] will not remove or alter any
> copyright text or trademarks of Owner [Spartak] contained on any Owner
> [Spartak] Product or in any Owner [Spartak] promotional and sales literature
> without the *prior written authorization* of Owner [Spartak].

(Ex. L, Section 7.4, emphasis added).

38.     The Distribution Agreement could only be modified "by *a writing* signed by a duly

authorized representative of each of the parties." (Ex. L, Section 15.3, emphasis added).

39.     Section 8.3 of the Distribution Agreement prohibited Desly from unauthorized

manufacturing: "Distributor agrees that it will not manufacture, modify or reproduce the

Products in any way, except as otherwise provided herein."  (Ex. L, Section 8.3).

40.     Under Section 2.1 of the Distribution Agreement, Desly could not repackage any of

Spartak's products, but could only distribute Spartak's products "in the packaging provided by

Owner [Spartak]".  (Ex. L, Sections 2.1).

41.     Under Section 7.3 of the Distribution Agreement, Desly was obligated to report to

Spartak any customer dissatisfaction with Spartak's products.  (Ex. L, Section 7.3).

42.     Under Section 9 of the Distribution Agreement, Spartak warranted that its products

already conformed to the standards of the U.S food and Drug Administration.  (Ex. L, Section 9).

43.     Desly's obligations as an exclusive distributor to promote and market Spartak's products

in the United States are addressed under Sections 3 and 7.2 of the Distribution Agreement, Desly

agreed to: (1) "use its best efforts to promote the sale of the Owner's [Spartak's] Products and

the *goodwill of Owner [Spartak]*," (2) "permit Owner [Spartak] to review all Distributors'

[Desly's] promotion and advertising material for the products prior to use"; and (3) "not use and

. . . withdraw and retract any promotion or advertising that Owner [Spartak] finds unsuitable, or

is in breach of the terms of this Agreement."  (Ex. L, Sections 3 and 7.2, emphasis added; Ex.

KK, Pilkevich Trans. 93:25-94:12; 96:25-97:8).

44.     Section 15.4, titled "Independent Contractors," of the Distribution Agreement defined the

relationship between the parties:

> It is expressly agreed that Owner [Spartak] and Distributor [Desly] are acting
> hereunder as independent contractors and under no circumstances shall any of
> the employees of one party be deemed the employees of the other for any
> purpose. This Agreement shall not be constructed as authority for either party
> to act for the other party in any agency or other capacity or to make
> commitments of any kind for the account of or on behalf of the other except to
> the extent and for the purpose provided for herein. Distributor [Desly] agrees
> that it is not a partner, broker, employee or franchise of Owner [Spartak].

(Ex. L, Section 15.4).

45.     In the Distribution Agreement Spartak did not transfer to Desly any of Spartak's

intellectual property rights, including the SPARTAK Mark and SPARTAK Logo. Under the

Distribution Agreement, Spartak explicitly and expressly retained all of its trademark and other

intellectual property rights.  (Pilkevich Dec. ¶ 24; Ex. L).

46.     Despite this unequivocal retention in the Distribution Agreement, Desly filed trademark

applications with the United States Patent and Trademark Office ("USPTO") falsely alleging that

it is the owner of the SPARTAK Mark and the SPARTAK Logo.  On January 6, 2009, Desly

submitted applications to register the SPARTAK Mark and SPARTAK Logo in English and

Russian (Cyrillic), bearing the designs depicted immediately below, which were registered on

July 14, 2009 as Registration Nos. 3,654,389 and 3,654,393.



| Registration No. 3,654,389 | Registration No. 3,654,393 |
|---|---|

("Desly's Unauthorized Registrations," shown in Ex. UU).

47.    On July 10, 2012, Spartak filed applications for International and United States registrations of the SPARTAK Mark and SPARTAK Logo based on its already registered Belarusian registrations, in class 30 for "pastry and confectionery":

| United States Application No. | International Application No. | Mark | Base Registration |
|---|---|---|---|
| 79/117,403 | 1127951 | СПАРТАК | BY (Belarus) 7477, registered 11/24/1997 |
| 79/116,646 | 1125953 | SPARTAK | BY (Belarus) 17703, registered 9/4/2003 |
| 79/118,407 | 1130489 | Спартак | BY (Belarus) 32012, registered 2/19/2010 |

(hereinafter, "Spartak's Applications," attached as Ex. M; Pilkevich Dec. ¶ 28).

48.    In 2012, at the direction Spartak's General Director at the time, Alesya Samsonava, Spartak's Legal Department directed its outside counsel Ms. Mariam Goryachko to file Spartak's Applications referred to in paragraph 47.  (Pilkevich Dec. ¶ 53; Ex. OO, Samsonava Trans. 46:1-15, 72:13-18, 73:3-19).

49.    On June 27, 2012, Spartak's General Director at the time, Alesya Samsonava, personally signed declarations in support of extending protection of Spartak's Applications to the United States.  These declarations covered the SPARTAK Mark and SPARTAK Logo and listed Spartak as the applicant/holder.  (Pilkevich Dec. ¶ 54; copies of the Declarations of Intention to Use the

Mark in the United States are shown in Ex. W).

50.    On November 21, 2012, Spartak learned about Desly's Unauthorized Registrations when

it received an email from Spartak's trademark attorney, Ms. Mariam Goryachko, informing

Spartak of the rejections of Spartak's United States applications.  The email stated in part that:

> We received notification of refusals in the United States.
>
> Trademark number 1130489 SPARTAK (combined) is rejected in light of
> earlier national trademark registration number 3654393 SPARTAK
> (combined), registered in a wide range of goods in class 30, in the name of
> Desly International Corporation (USA), date of registration, 07/14/2009…
>
> Trademark number 1125953 SPARTAK is rejected in light of earlier national
> trademark registration number 3654389 SPARTAK (combined), registered in
> a wide range of goods in class 30, in the name of Desly International
> Corporation (USA), date of registration, 07/14/2009.

(Pilkevich Dec. ¶¶ 29-30; a copy of that email is attached as Ex. N; copies of Office Actions

issued by the USPTO on November 2, 2012 to Spartak rejecting its applications in light of

Desly's Unauthorized Registrations are shown in Ex. VV).

51.    On November 28, 2012, Spartak informed Desly by letter that it had become aware of

Desly's inappropriate activities/filings at the USPTO and terminated the Distribution Agreement.

(Pilkevich Dec. ¶ 32; a copy of that letter is shown in Ex. O).

52.    Despite the November 28, 2012 termination, on December 3, 2012, without any

authorization, Desly filed two additional applications for the word-mark SPARTAK in English

and Russian (Cyrillic) under U.S. Application Serial Nos. 85/793,451 and 85/793,507,

respectively (hereinafter, "Desly's Unauthorized Applications", shown in Ex. WW).

53.    In Desly's Unauthorized Registrations and Desly's Unauthorized Applications, Desly

indicated first use of January 1, 1991 — before Desly was formed — and first use in commerce

of March 9, 2001 — before any shipments were made from Spartak to Desly and before the

SPARTAK Logo existed.  (*See* Exs. UU and WW; Ex. PP, Andrey Novikov[7] Deposition

Transcript dated December 11, 2013 ("Andrey Novikov Trans.") at 95:18-97:2, 120:15-121:15).

54.     On December 21, 2012, Desly responded to Spartak's November 28 termination letter

claiming that its fraudulent trademark applications were simply "good business practice routinely

conducted by Desly International Corp in order to protect intellectual property being used in

connection with goods being distributed on territories where Desly International Corp holds

exclusive distribution rights," and offered to discuss the "possible transfer of rights to the

intellectual property currently owned by Desly," i.e., Spartak's own SPARTAK Mark and

SPARTAK Logo.  (Pilkevich Dec. ¶ 33; a copy of that letter is shown in Ex. P).

55.     On January 31, 2013, Desly recorded Desly's Unauthorized Registrations with U.S.

Customs and Border Protection as Recordation Nos. TMK 13-00112 and 13-00117 shown in Ex.

XX.

56.     On February 19, 2013, Desly threatened Spartak with a lawsuit alleging infringement of

Desly's Unauthorized Registrations, and threatened that Spartak's goods would be confiscated

and destroyed upon importation if Spartak continued to distribute its goods in the United States

bearing Spartak's own SPARTAK Mark and SPARTAK Logo.  (Pilkevich Dec. ¶ 34; a copy of

that letter is shown in Ex. Q).

57.     On February 28, 2013, Spartak filed cancellation proceedings in the USPTO to cancel

Desly's Unauthorized Registrations.  (Pilkevich Dec. ¶ 35; copies of the Petitions to Cancel are

shown in Ex. R).

58.     Plaintiff Marat Novikov, who was a member of the Supervisory Board at Spartak and the

President of Desly, manipulated cash flow between Spartak and Desly by influencing Spartak to

---

[7] Andrey Novikov, a Plaintiff in this case, is a partial owner and a vice president of Desly, who has never been
employed by Spartak or owned any shares in Spartak. (Ex. PP, Andrey Novikov Trans. 41:9-11, 40:8-15, 32:21-
33:1).

reduce prices for products sold by Spartak to Desly. (Ex. KK, Pilkevich Trans. 161:11-163:2).

Generally, Spartak sold its products to its foreign distributors based on a standard price list.

(Pilkevich Dec. ¶ 76; a copy of Spartak's General Price List effective June 2, 2009 is shown in

Ex. DD).  However, Desly received products based on unique price lists at much lower prices.

(Pilkevich Dec. ¶ 76; a copy of Spartak's Price List for Desly is shown in Ex. EE).  (Ex. KK,

Pilkevich Trans. 66:9-67:8).  Between 2008 and 2012, Spartak was instructed by General

Director Alesya Samsonava to maintain profitability margins at a ceiling of 5-6% with respect to

all shipments to Desly, resulting in profitability by Spartak that varied between 2-6%.  Spartak's

profitability in other countries where it distributed its products through other distributors was

significantly higher.  (Pilkevich Dec. ¶ 77; copies of Spartak's Profitability reports based on

shipments to foreign countries for the years 2009 through 2012 are shown in Ex. FF; Ex. KK,

Pilkevich Trans. 54:5-16; 70:11-21, 71:15-22, 73:2-21; 75:10-16; 126:17-127:6, 161:11-162:22).

### C. Spartak Did Not Authorize Desly to File Any Trademark Applications in the United States for the SPARTAK Mark and SPARTAK Logo and Name Desly As the Owner of These Applications

59.     Spartak did not authorize Desly to file any trademark applications in the United States for

the SPARTAK Mark and the SPARTAK Logo, including Desly's Unauthorized Registrations

and Desly's Unauthorized Applications, and name Desly as the owner of these applications.

(Pilkevich Dec. ¶¶ 29-31, 36, 39, 55-63, 66).

60.     Spartak is unaware of any entity that has superior rights than Spartak to the SPARTAK

Mark or SPARTAK Logo.  (Pilkevich Dec. ¶ 86).

61.     Spartak's ownership rights to the SPARTAK Mark and SPARTAK Logo have never

passed from Spartak to Desly or to any other company.  (Pilkevich Dec. ¶ 36).

62.     Desly did not inform Spartak that it had applied for and received Desly's Unauthorized

Registrations.  (Ex. PP, Andrey Novikov Trans. 251:3-5; Ex. MM, Marat Novikov[8] Deposition

Transcript dated December 13, 2013 ("Marat Novikov Trans.") at 165:3-10).

63.    Until November 21, 2012, Spartak had not been informed by Desly, Marat Novikov,

Olga Novikov, Andrey Novikov, or by any other party, that Desly's Unauthorized Registrations

named Desly as the owner.  (Pilkevich Dec. ¶ 31; Ex. QQ, Desly's RRFA No. 25, Marat

Novikov's RRFA No. 31, Olga Novikov's RRFA No. 31, Andrey Novikov's RRFA No. 31).

64.    Spartak did not enter into any *written* agreement with Desly to transfer any ownership

rights in the SPARTAK Mark or SPARTAK Logo to Desly. (Pilkevich Dec. ¶ 39; Ex. MM,

Marat Novikov Trans. 155:5-16, 156:16-21, 158:4-7, 188:13-190:10; Ex. PP, Andrey Novikov

Trans. 93:7-9, 145:13-15, 150:15-151:2, 174:19-175:9).

65.    Spartak has not provided Desly, or any other entity, any of the following: (a) *written*

consent to register the SPARTAK Mark and SPARTAK Logo in Desly's name; (b) *written*

agreement or acknowledgement that Desly owns the SPARTAK Mark or the SPARTAK Logo in

the United States; or (c) *assignment* of Spartak's rights to the SPARTAK Mark or SPARTAK

Logo together with the business and goodwill appurtenant thereto.  (Pilkevich Dec. ¶ 61; Ex.

MM, Marat Novikov Trans. 155:5-16, 156:16-21, 158:4-7, 188:13-190:10; Ex. PP, Andrey

Novikov Trans. 93:7-9, 145:13-15, 150:15-151:2, 174:19-175:9).

66.    All decisions of the Supervisory Board of Spartak are memorialized in protocols signed

by all members and stored in the company's files indefinitely and memoranda of Spartak's

management meetings are also documented. (Pilkevich Dec. ¶¶ 56-57; Ex. LL, Bondarev Trans.

124:10-23; a letter from Mr. S.V. Kozik, Chairman of the Supervisory Board of Sparta, dated

_____

[8] Marat Novikov, a Plaintiff in this case, is a partial owner and president of Desly, who was a member of Spartak's
Supervisory Board, but has never been employed by Spartak or directly owned any shares in Spartak. (Ex. MM,
Marat Novikov Trans. 27:4-7, 28:11-17, 79:22-80:3, 80:18-22, 83:9-11, 84:15-17; Ex. OO, Samsonava Trans.
21:22-22:8).

May 29, 2013 is attached as Ex. BBB).

67.     Spartak searched its records, including its Supervisory Board protocols, memoranda of management meetings and incoming and outgoing communication logs, but did not discover any mention, prior to November 21, 2012, of Desly's Unauthorized Registrations, any authorization from Spartak to Desly or to anyone else to file trademark applications in the United States for the SPARTAK Mark or the SPARTAK Logo, or authorization for Desly to identify itself as the owner of the SPARTAK Mark or the SPARTAK Logo ("Authorization").  (Pilkevich Dec. ¶¶ 58, 60; Ex. LL, Bondarev Trans. 124:10-23; Ex. BBB).

68.     Spartak searched its records, including its Supervisory Board protocols, memoranda of management meetings and incoming and outgoing communication logs, but did not discover any mention of notice, prior to November 21, 2012, from Desly or anyone else that the applications that led to Desly's Unauthorized Registrations had been filed, or that Desly received registrations for the SPARTAK Mark and SPARTAK Logo ("Notice"). (Pilkevich Dec. ¶¶ 59-60; Ex. LL, Bondarev Trans. 124:10-23; Ex. BBB).

69.     During the time that Marat Novikov was a member of the Supervisory Board at Spartak, he did not have the right to enter into contracts on behalf of Spartak.  (Pilkevich Dec. ¶ 62; Ex. MM, Marat Novikov Trans. 90:6-8).

70.     None of Spartak's current employees that Spartak approached who are most likely to be knowledgeable were aware of Desly's Unauthorized Registration before November 21, 2012 or of any such Authorization or Notice.  (Pilkevich Dec. ¶ 63; Ex. LL, Bondarev Trans. 67:7-12).

71.     Spartak's Legal Department would have been informed if Spartak had, at any time, authorized Desly to file trademark applications for the SPARTAK Mark and SPARTAK Logo in Desly's name.  (Pilkevich Dec. ¶ 55).  Mr. Bondarev, who was the chief of legal department

between 2008 and 2009 and who would have been informed of any such Authorization, was not aware that Desly filed trademark applications in the United States for the SPARTAK Logo.  (Ex. LL, Bondarev Trans. 65:20-66:3, 124:24-125:10).

72.     Neither Mr. Nikolai Kondrikov, a former member of Spartak's Supervisory Board from 2004 to 2012, nor Mr. Andrey Baranov, a former General Director of Spartak from July 2006 to June 2008 who signed the Distribution Agreement on behalf of Spartak, were aware of Desly's Unauthorized Registrations or of any such Authorization or Notice.  (*See* Mr. Kondrikov Declaration dated January 28, 2014 ("Kondrikov Dec.") at ¶¶ 2-4 and Mr. Baranov Declaration dated January 28, 2014 ("Baranov Dec.") at ¶¶ 2-5; Ex. KK, Pilkevich Trans. 91:18-23).

73.     Spartak did not authorize Desly to identify itself as "Desly d/b/a/ Spartak" or to open a bank account under the name "Desly International d/b/a Spartak."  (Pilkevich Dec. ¶ 64; Kondrikov Dec. ¶¶ 5-6; Baranov Dec. ¶¶ 6-7; Ex. PP, Andrey Novikov Trans. 242:1-22; Ex. NN, Olga Novikov Trans. 227:7-228:6, 229:20-22).

74.     Spartak did not authorize Desly to identify itself as Spartak USA or to register the domain name spartakusa.com.  (Pilkevich Dec. ¶ 65; Ex. PP, Andrey Novikov Trans. 197:7-15).

> ### D.     Desly Did Not Acquire Any Rights to the SPARTAK Mark and SPARTAK Logo By Virtue of Being a Distributor of Spartak's Goods in the United States

75.     Spartak is a separate company from Desly: Spartak is not a parent company of Desly and Desly is not a wholly-owned subsidiary of Spartak; Desly is not a parent company of Spartak and Spartak is not a wholly-owned subsidiary of Desly; Desly and Spartak are not affiliated corporations; Spartak and Desly are not sister corporations ― Desly and Spartak are not subsidiaries of the same parent corporation; and Spartak took no part in the formation of Desly. (Pilkevich Dec. ¶¶ 37-38; Ex. QQ, Desly's RRFA Nos. 28-31; Ex. MM, Marat Novikov Trans.

45:5-14, 46:5-17; Ex. NN, Olga Novikov Trans. 50:5-20; Ex. PP, Andrey Novikov Trans. 44:9-

19, 45:10-12; copies of Organizational Charts produced by Plaintiffs are shown in Ex. YY).

76.     Spartak and Desly have different shareholders/owners: Desly is owned by Marat

Novikov, Olga Novikov, and Andrey Novikov, and Spartak is a joint venture joint stock

company with outstanding shares distributed between physical persons, legal entities, and the

Republic of Belarus.  (Ex. LL, 57:16-58:16; D.I[9]. D.I. 9-2 ¶ 6; Ex. MM, Marat Novikov Trans.

27:4-13; Ex. YY, Organizational Charts).

77.     The only relationship between Spartak and Desly is that they entered into supply

agreements between September 1, 2001 through July 20, 2006 and the Distribution Agreement

on July 21, 2006.  (Ex. MM, Marat Novikov Trans. 47:14-21).

78.     All authorized products sold by Desly bearing the SPARTAK Mark and SPARTAK Logo

were manufactured and supplied by Spartak.  (Pilkevich Dec. ¶ 25).

79.     All packaging provided to Desly by Spartak identified the source of the goods as Spartak.

(Pilkevich Dec. ¶ 69; *see, e.g.,* image of Spartak's packaging shown in Ex. ZZ, SPTK-000262).

80.     None of the packaged products that Spartak shipped to Desly identified Desly as the

manufacturer of those products.  (Pilkevich Dec. ¶ 71; *see, e.g.,* image of Spartak's packaging

shown in Ex. ZZ, SPTK-000262).

81.     All packaging provided to Desly by Spartak bearing the SPARTAK Mark and the

SPARTAK Logo identified Desly as an importer and distributor.  (Ex. QQ, Desly's RRFA No.

44; Pilkevich Dec. ¶ 70; Ex. MM, Marat Novikov Trans. 121:22-122:4; *see, e.g.,* image of

Spartak's packaging shown in Ex. ZZ, SPTK-000262).

82.     Desly's name appears only a single time as "Imported and distributed by Desly

International Corp." in small print on all packaging provided to Desly by Spartak bearing the

_____

[9] "D.I." references the docket items of this case as maintained by the Court.

SPARTAK Mark and the SPARTAK Logo. (*See, e.g.,* image of Spartak's packaging shown in Ex. ZZ, SPTK-000262).

83.     The products provided to Desly by Spartak were advertised in the United States as Spartak's products, not Desly's — Desly was identified as merely a distributor: "Imported and distributed by Desly International Corp." (Ex. NN, Olga Novikov Trans. 259:10-14).

84.     Desly has not manufactured any goods bearing the SPARTAK Mark or SPARTAK Logo, and it did not first affix the SPARTAK Mark or SPARTAK Logo onto Spartak's goods. (Pilkevich Dec. ¶ 26; Ex. MM, Marat Novikov Trans. 142:10-19; Ex. NN, Olga Novikov Trans. 159:10-21).

85.     Desly never had any input into or control over the quality of Spartak's products. (Pilkevich Dec. ¶¶ 27 and 42; Pilkevich Trans. 159:21-160:9; Ex. MM, Marat Novikov Trans. 142:10-19; Ex. NN, Olga Novikov Trans. 159:10-21).

86.     Desly has never had any role in, responsibility for, or control over Spartak's Quality Management System. (Pilkevich Dec. ¶ 42; Pilkevich Trans. 159:21-160:9; Ex. MM, Marat Novikov Trans. 142:10-19; Ex. NN, Olga Novikov Trans. 159:10-21).

87.     The only words included in the SPARTAK Mark and the SPARTAK Logo are "Spartak" in English or Russian (Cyrillic) — Desly's name does not appear in the SPARTAK Mark and the SPARTAK Logo. (Ex. QQ, Desly's RRFA Nos. 13 and 42).

88.     Spartak has provided to Desly advertising materials that illustrated the SPARTAK Mark and SPARTAK Logo, including, but not limited to, catalogs, flyers, leaflets, promotional stints, samples of product, and television commercials. (Pilkevich Dec. ¶ 74; Ex. KK, Pilkevich Trans. 178:4-25; Ex. OO, Samsonava Trans. 95:20-96:4; Ex. NN, Olga Novikov Trans. 265:16-266:4, 266:15-21, 279:9-20, 281:4-14). For example, in 2010 Spartak provided to Desly 5,000 units of

advertisement flyers for dissemination in the United States.  (Pilkevich Dec. ¶ 74; a copy of such

a flyer is shown in Ex. Z).  On or about July 10, 2012, Spartak provided to Desly 660 pieces of

confectionary goods as samples for marketing purposes.  (Pilkevich Dec. ¶ 74; a copy of a July

10, 2012 Agreement between Spartak and Desly concerning those goods is shown in Ex. AA).

On or about June 28, 2012, per Desly's request, Spartak provided to Desly product samples for

promotional tasting/sampling in the United States.  (Pilkevich Dec. ¶ 74; a copy of a June 28,

2012 Letter from Desly to Spartak concerning those product samples is shown in Ex. BB).

89.     Spartak participated in several exhibitions in the United States, including in the "All

Candy Expo" in 2004, 2005, and 2006, where Spartak showcased its products under the

SPARTAK Mark and SPARTAK Logo.  (Pilkevich Dec. ¶ 75; copies of articles discussing the

"All Candy Expo" are attached as Ex. CC; Ex. MM, Marat Novikov Trans. 161:4-9; Ex. NN,

Olga Novikov Trans. 279:9-16).

90.     The relevant consuming public of Spartak's products in the United States is Russian

speaking consumers who immigrated to the United States.  Desly distributed Spartak's products

to international stores in Brooklyn that cater to Russian speaking consumers and most of Desly's

advertisements for Spartak's products were in Russian directed to Russian speaking consumers.

(Ex. NN, Olga Novikov Trans. 268:14-22, 269:14-20, 270:3-5, 271:8-10, 272:3-9, 273:13-

274:12).

91.     The above activities, along with Spartak's sales in foreign countries to foreign consumers

who later immigrated to the United States, established that confectionary goods bearing the

SPARTAK Marks originate from Spartak.  (*See, e.g.,* D.I. 20-1, Affidavit of Mark Kipnis ¶¶ 7

and 14).  For example, an article from newVestnik, a free Russian-American advertising

magazine serving New York and New Jersey, dated February 14, 2012 and titled "Spartak's

Secret of Success," shown in Ex. AAA, illustrates that the Russian speaking immigrants from the former Soviet Union recognize and remember Spartak's reputation for quality and original recipes passed down from one generation to the next.  Marat Novikov, who immigrated to the United States in 1989, admits that he was aware of Spartak when he worked in a Supermarket in Belarus before he was involved with Spartak. (Ex. MM, Marat Novikov Trans. 117:18-20).

       **E.**    **Desly Did Not Acquire Ownership Rights in the SPARTAK Mark and SPARTAK Logo Simply Because Marat Novikov Was Partial Owner of Companies that Did Business with Spartak**

92.     Double Star International, Ltd. ("DSI") and Double Star Enterprises Co. Inc. ("DSE") are not parties to this case and do not claim any rights to the SPARTAK Mark and SPARTAK Logo.

93.     DSI was incorporated on or about January 7, 1993.  (Ex. QQ, Desly's RRFA No. 7).

94.     DSE was incorporated on or about September 4, 1996.  (Ex. QQ, Desly's RRFA No. 10).

95.     Spartak is a separate company from DSI and DSE:  Spartak is not a parent company of either DSI or DSE; DSI and DSE are not wholly-owned subsidiaries of Spartak; DSI or DSE are not parent companies of Spartak; Spartak is not a wholly-owned subsidiary of either DSI or DSE; Spartak is not an affiliated corporation of either DSI or DSE; Spartak is not a sister corporation of either DSI or DSE — Spartak, DSI, and DSE are not subsidiaries of the same parent corporation; and Spartak took no part in the formation of DSI or DSE. (Pilkevich Dec. ¶ 37-38; Ex. QQ, Desly's RRFA Nos. 34-35; Ex. MM, Marat Novikov Trans. 64:2-64:8, 74:22-75:6; Ex. NN, Olga Novikov Trans. 70:22-71:12; Ex. YY, Organizational Charts).

96.     Desly, DSI, and DSE are separate companies: Desly is not a parent company of either DSI or DSE; DSI and DSE are not wholly-owned subsidiaries of Desly; DSI or DSE are not parent companies of Desly; Desly is not a wholly owned subsidiary of either DSI or DSE; Desly is not an affiliated corporation of either DSI or DSE; Desly is not a sister corporation of either

DSI or DSE — Desly, DSI, and DSE are not subsidiaries of the same parent corporation. (Ex. QQ, Desly's RRFA Nos. 32-33; Ex. MM, Marat Novikov Trans. 45:5-14, 63:11-64:1, 71:21-72:5; 74:6-21; Ex. NN, Olga Novikov Trans. 44:18-45:5, 71:3-12, 111:2-4; Ex. PP, Andrey Novikov Trans. 54:13-22; Ex. YY, Organizational Charts).

97.     The only relationship between Spartak and DSI is that DSI owned and owns some shares in Spartak. (Ex. OO, Samsonava Trans. 61:12-18; Ex. MM, Marat Novikov Trans. 64:2-11; Ex. YY, Organizational Charts).

98.     The only relationship between Desly, DSI, and DSE is that Marat Novikov is a partial owner of the three companies.  However, DSI and DSE have different co-owners than Desly. Desly is owned by Plaintiffs Marat Novikov, Olga Novikov and Andrey Novikov.  DSI and DSE are owned by Marat Novikov, Leo Turie, and Oleg Renkovski.  (Ex. MM, Marat Novikov Trans. 27:4-13, 31:14-32:9, 37:10-19; Ex. YY, Organizational Charts).

99.     The only relationship between Spartak and DSE is that DSE used to supply some raw materials to Spartak in the past, including cacao beans and packaging.  (Ex. OO, Samsonava Trans. 61:19-62:2, 62:9-12; Ex. MM, Marat Novikov Trans. 74:22-75:6; Ex. RR, Desly's Response to Interrogatory ("RROG") No. 14; Ex. QQ, Desly's RRFA Nos. 52 and 56; Ex. YY, Organizational Charts).

100.     Spartak's ownership rights to the SPARTAK Mark and SPARTAK Logo have never passed from Spartak to Marat Novikov, Olga Novikov, Andrey Novikov, DSI, DSE, or to any other company.  (Pilkevich Dec. ¶ 36).

101.     Spartak did not enter into any agreement with Marat Novikov, Olga Novikov, Andrey Novikov, DSI, or DSE to transfer any ownership rights in the SPARTAK Mark or SPARTAK Logo to Marat Novikov, Olga Novikov, Andrey Novikov, DSI, or DSE.  (Pilkevich Dec. ¶ 39).

102.    Neither Marat Novikov, Olga Novikov, Andrey Novikov, DSI, nor DSE have been involved in the quality control of the products manufactured and supplied by Spartak or in Spartak's Quality Management System.  (Pilkevich Dec. ¶ 42; Ex. KK, Pilkevich Trans. 159:21-160:15; Ex. MM, Marat Novikov Trans. 64:9-11, 106:13-20; Ex. NN, Olga Novikov Trans. 159:10-21; 162:1-5; Ex. OO, Samsonava Trans. 62:13-63:1).

103.    Neither Desly nor DSI have entered into a contract to supply raw materials to Spartak. (Ex. QQ, Desly's RRFA Nos. 54, 55, 58 and 59).

104.    The raw materials DSE supplied to Spartak, including cacao beans and packaging, were sourced by DSE from one or more third-parties.  DSE sourced cacao beans from Nord Cacao OU and Facta International BV, among others.  (Ex. QQ, Desly's RRFA Nos. 53 and 57; Ex. NN, Olga Novikov Trans. 120:10-14, 121:10-21, 122:3-6).

105.    When Spartak was purchasing raw materials from DSE, DSE did not supply all the raw materials used to manufacture Spartak's confectionary goods.  For example, DSE did not supply to Spartak milk, sugar, flour, fruit and fruit products, honey, jam, or food ingredients such as additives, fillers, and flavoring.  Spartak sourced these raw materials independently of DSE. (Pilkevich Dec. ¶ 79; Ex. NN, Olga Novikov Trans. 118:5-9, 119:22-120:7).

106.    DSE had no involvement in setting up the quality standard of Spartak's raw materials, it simply supplied raw materials to Spartak, such as cacao beans, based on Spartak's quality requirements. (Ex. KK, Pilkevich Trans. 157:11-158:4).

107.    At the time DSE supplied cacao beans to Spartak, Spartak regularly employed a competitive bidding process for the purchase of cacao beans.  (Pilkevich Dec. ¶ 80; a copy of the documents involved in Spartak's bidding process for the purchase of cacao beans for the period of January 12, 2009 through December 31, 2009 is shown in Ex. GG).  During that process,

Spartak's tender committee sent to cacao bean suppliers a request for proposal in the form of a tender shown in Ex. GG, SPTK-001229.  (Pilkevich Dec. ¶ 80; Ex. KK, Pilkevich Trans. 38:19-23).  The tender included the cacao beans' quality requirements as determined by Spartak's laboratory.  (Pilkevich Dec. ¶ 80; Ex. GG, SPTK-001230; Ex. KK, Pilkevich Trans. 157:11-158:4; Ex. NN, Olga Novikov Trans. 177:18-178:17, 179:8-11, 180:18-181:7).  Marat Novikov, Olga Novikov, Andrey Novikov, Desly, DSI, and DSE were not involved in determining these quality requirements.  *Id.*  After Spartak's tender committee selected DSE as a bidder, Spartak entered into a supply agreement with DSE.

108.    When raw materials were supplied by DSE, Spartak's laboratory performed an entry check to verify quality compliance.  (Ex. KK, Pilkevich Trans. 39:18-40:8, 160:16-161:6; Ex. OO, Samsonava Trans. 54:16-55:12, 108:3-12; Ex. MM, Marat Novikov Trans. 97:1-7).  Examples of Spartak's Certificates of Acceptance of Raw Materials for Quality for hazelnuts and peanuts supplied by DSE are illustrated in Ex. HH and Ex. II.  (Pilkevich Dec. ¶ 80).  Normally, if the raw materials were found to be defective, they were rejected by Spartak.  (Pilkevich Dec. ¶ 80; *see, e.g.,* Ex. HH; Ex. OO).

109.    Other than supplying raw materials to Spartak, DSE had no involvement in the processes leading to manufacture of Spartak's products. (Pilkevich Dec. ¶ 81; Ex. OO, Samsonava Trans. 62:13-63:1; Ex. MM, Marat Novikov Trans. 106:13-20; Ex. NN, Olga Novikov Trans. 159:10-21; 162:1-5).

110.    Spartak manufactured its confectionary goods from raw materials, and its technical control service department verified that the manufacturing processes and final products complied with quality controls.  (Pilkevich Dec. ¶ 82; Ex. KK, Pilkevich Trans. 40:9-18; 160:16-161:6; Ex. OO, Samsonava Trans. 55:13-56:2).

111.    DSE did not process, touch, or store any of the raw materials it supplied to Spartak — it simply arranged deliveries of raw materials from DSE's third-party suppliers to Spartak. (Ex. KK, Pilkevich Trans. 157:3-10; Ex. OO, Samsonava Trans. 101:1-3; Ex. MM, Marat Novikov Trans. 94:8-12, 95:8-13, 96:7-9; Ex. NN, Olga Novikov Trans. 108:12-15, 109:5-11, 120:10-14, 122:7-11, 123:6-9; 124:5-7; 125:19-126:1, 127:1-10, 129:3-22, 174:5-15; Ex. QQ, Desly's RRFA Nos. 53 and 57).

112.    From the end of 2012 until today, Facta International BV and Nord Cacao OU have supplied cacao beans to Spartak. (Pilkevich Dec. ¶ 78).

113.    After Spartak discontinued using DSE in 2012, and begun using Nord Cacao OU and Facta International BV (the same companies from which DSE sourced cacao beans), Spartak has been paying substantially lower prices for cacao beans, saving $650,000 in the year 2013.  (*See* Ex. FFF, a document produced by Spartak titled "Economic impact resulting from the change of supplier for cacao beans in 2013").

114.    The January 1, 2007 Work-For-Hire Agreement between DSE and DPJN was to develop particular packaging designs for Spartak's products.  DPJN did not design the SPARTAK Logo per the January 1, 2007 Work-For-Hire Agreement because the SPARTAK Logo was already in existence as of 2002. (Pilkevich Dec. ¶ 40; Ex. QQ, Desly's RRFA No. 60).

115.    In a December 6, 2012 letter, Spartak asked DSE about obtaining a license to particular packaging designs that were created pursuant to a 2007 Work-For-Hire Agreement between DSE and DPJN.  Spartak did not ask for any license of the SPARTAK Mark and SPARTAK Logo in that letter, or by any other means, because Spartak already owned these intellectual property rights.  (Pilkevich Dec. ¶ 41).

116.    The packaging designs listed in the December 6, 2012 letter from Spartak to DSE are no

longer used with the products sold by Spartak in the United States.  (Pilkevich Dec. ¶ 43).

117.    Desly never entered into an agreement with DPJN.  (Ex. QQ, Desly's RRFA Nos. 62 and

63; Ex. NN, Olga Novikov Trans. 142:16-22).

118.    Desly never entered into a written agreement with DSE concerning the SPARTAK Logo

— Plaintiffs did not produce any such agreement. (Ex. RR, Desly's RROG No. 1, Marat

Novikov's RROG No. 1, Olga Novikov's RROG No. 1, Andrey Novikov's RROG No. 1).

### F.    Desly's Repeated Pattern of Filing Trademark Applications With the USPTO That It Did Not Own

119.    Desly also tried to take ownership of the KOMMUNARKA mark from confectionary

factory Sovmestnoe Otkrytoe Aktsionernoe Obshchestvo "Kommunarka" ("Kommunarka") for

whom it distributed goods in the United States. On December 3, 2012, Desly filed two trademark

applications for the mark KOMMUHAPKA. (Mr. Ivan Danchenko Declaration[10] dated February

4, 2014 ("Danchenko Dec.") at ¶ 6).  Fortunately for Kommunarka, it already filed for and

received a trademark registration for the KOMMUNARKA mark in 2009, resulting in Desly's

abandonment of its applications. (*Id.* at ¶ 4).  Desly did not get any authorization from

Kommunarka to file these trademark applications.  (*Id.* at ¶¶ 7-8).  While admitting that Desly

did not own the KOMMUNARKA trademark (Ex. MM, Marat Novikov Trans. 170:18-20; Ex.

NN, Olga Novikov Trans. 88:14-16), Plaintiffs' alleged ownership of the SPARTAK Mark and

SPARTAK Logo based on Desly's relationship with Spartak is predicated on the same type of

relationship that Desly had with Kommunarka: Marat Novikov owned shares in Kommunarka

(Ex. MM, Marat Novikov Trans. 166:8-9; Ex. YY, Organizational Charts), DSE supplied raw

materials to Kommunarka, including cacao beans and packaging, among others (Ex. MM, Marat

Novikov Trans. 170:9-17; Ex. NN, Olga Novikov Trans. 130:9-12, 133:1-16, 152:1-14, 152:22-

---

[10] Mr. Danchenko is the General Director of Kommunarka since October 12, 2012.  (Danchenko Dec. ¶ 1).

153:2), and Desly distributed and advertised Kommunarka's products in the United States, was identified as an importer and distributor on Kommunarka's products, and received costumer complaints in the United States regarding Kommunarka's products (Ex. MM, Marat Novikov Trans. 30:20-22, 50:4-11; Ex. NN, Olga Novikov Trans. 86:5-18, 167:17-168:19, 274:19-275:16, 278:5-279:8; Ex. PP, Andrey Novikov Trans. 160:22-161:15).

### G.   Desly's Unauthorized Products

120.   The following products, shown in Ex. Ex. JJ,  were sold by Desly in the United States from at least April 1, 2011 through at least January 22, 2014:  Javine and Minskhlebprom manufactured the following products: "Cookies Yantarnye," "Honey Cookies «Golden Label»", "Sushki «Chelnochek» Vanilla," "Cookies with Nuts," "Sushki 'Malutka' with Sorbitol," "Sushki «Chelnochek» Vanilla Glaze," "Cookies Dream," "Cookies Liubitelskie" (hereinafter, "Desly's Unauthorized Products").  (Ex. RR, Desly's Second Supplemental RROG No. 8, including DES006840-6843).

121.   The packaging of Desly's Unauthorized Products are printed with the word "Spartak." (Pilkevich Dec. ¶ 83; Ex. JJ; Ex. NN, Olga Novikov Trans. 232:20-233:5, 233:15-18).

122.   Desly's Unauthorized Products are baked confectionary goods. (Ex. JJ).

123.   Desly's Unauthorized Products are not manufactured by Spartak. (Pilkevich Dec. ¶ 84; Pilkevich Trans. 164:6-21; Ex. RR, Desly's RROG No. 7; Ex. KK, Ex. OO, Samsonava Trans. 138:20-139:7; Ex. NN, Olga Novikov Trans. 234:9-11).

124.   Spartak did not authorize Desly to use the SPARTAK Mark on Desly's Unauthorized Products, or to represent in any way that Desly's Unauthorized Products were manufactured or supplied by Spartak.  (Pilkevich Dec. ¶ 85; Baranov Dec. ¶¶ 8-9; Kondrikov Dec. ¶¶  7-8; Ex. KK, Pilkevich Trans. 164:6-21, 165:5-6, 165:8-10; Ex. NN, Olga Novikov Trans. 236:14-19; Ex.

OO, Samsonava Trans. 140:7-12).

125.     Since 1997, Spartak has utilized the SPARTAK Mark in the United States for the sale of confectionary goods, including, *inter alia*, chocolates, candies, caramel candies, cookies, biscuits, wafers, and cakes.  (*See, e.g.,* Ex. T, listing shipments of wafers, caramels, candies, and biscuits; Ex. CC, listing chocolates, waffles, and biscuits; Ex. EE, listing caramels, cookies, waffles, cakes, and chocolates; Ex. FF, listing caramels, candies, chocolates, cookies, waffles, and cakes; Ex. TT, SPTK-001366, listing chocolates, caramels, dry cookies, and waffles).

126.     The Russian word "Spartak" translates to Spartacus — a leader in the Gladiatorial War against Rome. (*See* Ex. CCC, "Спартак," translate.google.com; "Spartacus", Merriam-Webster.com).  As such, the SPARTAK Mark is an arbitrary mark having no relation to the confectionary goods offered by Spartak under the SPARTAK Mark.

127.     At least some of the packaging of Spartak's confectionary goods distributed in the United States were printed with the design of the SPARTAK Mark, in both Russian (Cyrillic) and English, shown immediately below:

| SPARTAK Mark Design in Russian (Cyrillic) | SPARTAK Mark Design in English |
| --- | --- |
|  |  |

(Ex. D, SPTK-000218; Ex. KK, Pilkevich Trans. 153:24-154:4, 154:19-155:6, 180:19-181:15; Ex. GGG, showing printouts of Desly's website of Spartak's products).  Spartak created and used this design of the SPARTAK Mark in Russian (Cyrillic) in the 1990's and later in English. (*Id.*; Ex. HHH, showing images of Spartak's packaging from the late 1990's and early 2000's).

128.     Spartak's products and Desly's Unauthorized Products are placed in the same area of a grocery store, with the snacks and sweets. Desly's Unauthorized Products and Spartak's products

are included side-by-side on Desly's website, under the Snacks & Sweets category. (Ex. DDD, showing a printout of Desly's website under "Catalog > Snacks & Sweets").  Desly distributed its products to the same international/Russian stores it distributed Spartak's products. (Ex. NN, Olga Novikov Trans. 273:17-21).

Dated: May 16, 2014

Respectfully submitted,

/s/ John F. Ward _____
**John F. Ward** (JW 8012)
jward@wardzinna.com
**David G. Lindenbaum** (DL 1222)
dlindenbaum@wardzinna.com
**Hanna B. Mosolygo** (HM 0428)
hmosolygo@wardzinna.com
**WARD & ZINNA, LLC**
382 Springfield Avenue
Summit, New Jersey 07901
Phone: (908) 277-3333
Fax: (908) 277-6373

*Attorneys for Defendant JV JSC Spartak*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on this 16th day of May, 2014 via email upon the counsel of record shown below:

Darren M. Geliebter
dgeliebter@lombardip.com
Wing K. Chiu
wchiu@lombardip.com
Robert M. Klingon
rklingon@lgtrademark.com
Lucien C. Chen
lchen@lombardip.com
Lombard & Geliebter LLP
1115 Broadway, 12th Fl
New York, NY 10010

Alec Sauchik(AS 5002)
asauchik@kspclaw.com
Sauchik Law Group, P.C.
9712 Third Avenue
Brooklyn, New York 11209
Tel. (718) 787-9500

/s/ Hanna B. Mosolygo
Hanna B. Mosolygo (HM 0428)

*Attorneys for Defendant JV JSC Spartak*