FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ AUG 25, 2016

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

DESLY INTERNATIONAL CORPORATION;
MARAT NOVIKOV; OLGA NOVIKOV; ANDREY
NOVIKOV,

                 Plaintiffs,

         -against-

OTKRYTOE AKTSIONERNOE OBSHCHESTVO
"SPARTAK" a/k/a SOVMESTNOE
PREDPRIYATIE OTKRYTOE and a/k/a
AKTSIONERNOE OBSHCHESTVO "SPARTAK";
EURO IMPORT DISTRIBUTIONS INC.; EURO
IMPORT BEL LLC; EURO IMPORT INC.,

                 Defendants.

------------------------------------------------------------- x

**MEMORANDUM & ORDER**
13-CV-2303 (ENV) (LB)

VITALIANO, D.J.,

On April 15, 2013, plaintiffs Desly International Corporation ("Desly"), Marat Novikov, Olga Novikov, and Andrey Novikov brought claims against defendants Otkrytoe Aktsionernoe Obshchestvo "Spartak" a/k/a Sovmestnoe Predpriyatie Otkrytoe and a/k/a Aktsionernoe Obshchestvo "Spartak" (collectively, "Spartak") and Euro Import Distributions Inc., Euro Import Bel LLC ("Euro Bel"), and Euro Import Inc. (collectively, "Euro Import"), alleging trademark infringement, in violation of section 1114 of the Trademark Act of the United States (the "Act" or "Lanham Act"), 15 U.S.C. § 1051 et seq., and unfair competition and false designations of origin, in violation of section 1125(a) of the Act, along with related state law claims deceptive acts and practices, for unfair competition and dilution, including under § 360-1 et seq. of the New York General Business Law, and breach of an exclusive license agreement.[1]  In response,

---

[1]      Additionally, in its motion for summary judgment, Desly asserted, and for the first time, claims of trade dress infringement. See Pl. Br., Dkt. No. 61, at 14-22.



Spartak has brought counterclaims seeking to vindicate its own right to the subject trademark, and the cancellation of Desly's allegedly unauthorized trademark, for false or fraudulent registration under § 1120 of the Act, tortious interference with contract, trademark infringement, unfair competition and false designations of origin under § 1125(a) of the Trademark Act, trademark dilution under New York General Business Law § 360-1, trademark infringement and unfair competition under New York common law, and breach of contract.[2] Spartak seeks damages and attorneys' fees. For the reasons set forth below, plaintiffs' motion for summary judgment is denied and Spartak's motion for summary judgment is granted as to the relief it sought on its motion.

## **Background**

The following facts are drawn from the pleadings, the Local Rule 56.1 filings of the parties and their respective evidentiary submissions. The facts are construed, as they must be in the summary judgment context, and separately on each of the cross motions, in the light most favorable to the nonmoving party. See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc., 473 F.3d 450, 456 (2d Cir. 2007). Any factual disputes are noted.

Spartak is a Belarusian joint venture open-type joint stock company specializing in the production of chocolate. Pl. R. 56.1 Stmt., Dkt. No. 62, ¶ 2. Prior to 2002, Spartak obtained ownership of two logos, one featuring its name in Cyrillic ("Спармак") and the other displaying a Spartan soldier on horseback (each, the "Spartak logo"). Def. R. 56.1 Stmt., Dkt. No. 80, ¶ 13. Also, as of January 24, 1997, Spartak had registered its trademark (the "Spartak mark") in the

---

[2]  Euro Import also has brought counterclaims for tortious interference with existing and prospective business relationships and unfair competition under New York common law. Those claims are not the subject of any pending summary judgment motion, nor are Spartak's counterclaims for tortious interference and damages.

Republic of Belarus in both the Russian and English languages. See id. ¶ 5. Thereafter, Spartak also received trademark registration for the Spartak mark in the Russian Federation and several former member states of the Soviet Bloc. Id. ¶ 6. However, despite its registrations of the Spartak mark and logo in several European countries, as of 2012, Spartak had not registered the Spartak mark and logo in the United States.

The seeds of the present case were sown on or about March 9, 2001, when plaintiff Marat Novikov co-founded Desly, a New York corporation which deals primarily in the distribution of Eastern European confectionary goods throughout the United States. Def. R. 56.1 Stmt. ¶¶ 31-32; Pl. R. 56.1 Stmt. ¶ 2. On September 1, 2001, Spartak entered into a non-exclusive supply agreement with Desly, enabling Desly to begin distributing Spartak's confectionary goods. Def. R. 56.1 Stmt. ¶ 32. Approximately five years later, on July 21, 2006, Spartak and Desly expanded their commercial relationship by entering into a 25-year exclusive distributorship agreement (the "exclusive agreement"), granting Desly the exclusive right to distribute confectionary goods manufactured by Spartak in the United States. By the agreement terms, all packaging could bear the Spartak mark and Spartak logo. Id. ¶ 34; Pl. R. 56.1 Stmt. ¶ 6.

The cross motions for judgment are in an odd posture. Many of the issues they present are explicitly dealt with in the exclusive agreement. For example, section 2.4 of the exclusive agreement, titled "The Right to Use Trademark and Trade Name," states in relevant part:

> Any and all trademarks and trade names, which [Spartak] uses in connection with the rights granted hereunder, are and remain the exclusive property of [Spartak]. Nothing contained in this Agreement shall be deemed to give [Desly] any right, title or interest in any trademark or trade name of [Spartak] relating to the Products. Subject to notice from Owner [Spartak] in writing, which modifies or cancels such authorization, during the term of this Agreement, [Desly] may use the trademarks and trade names specified by [Spartak] in writing for normal advertising and promotion of Products.

3

Exclusive Agreement, Dkt. No. 81-12 § 2.4.

Similarly, section 8.2, titled "Property Rights," states in relevant part:

> [Desly] acknowledges and agrees that the Products and all copies thereof constitutes valuable trade secrets or proprietary and confidential information of [Spartak]; that title thereto is and shall remain in [Spartak]; and that all applicable copyrights, trade secrets, patents and other intellectual property rights in the Products and all other items licensed hereunder are and shall remain in [Spartak]. All other aspects of the Products and all other items licensed hereunder including Remains [sic] the sole and exclusive property of [Spartak] and shall not be sold, revealed, disclosed or otherwise communicated, directly or indirectly, by [Desly] to any person, company or institution whatsoever, other than for purpose set forth herein. It is expressly understood and agreed that no title to, or ownership of, [Spartak's] intellectual property rights, or any part thereof, is hereby transferred to [Desly].

Id. § 8.2.

Additionally, the basic terms governing termination by Spartak are laid out in section

11.2, "Owner Termination":

> This Agreement may be terminated immediately by [Spartak] under any of the following conditions:
>
> (a) if [Desly] shall be declared insolvent or bankrupt;
>
> (b) if a petition [is] filed in any court to declare one of the parties bankrupt or for a reorganization under the Bankruptcy law or any similar statute and such petition is not dismissed in ninety (90) days or if a Trustee in Bankruptcy or a Receiver or similar entity is appointed for one of the parties;
>
> (c) if [Spartak] terminates any provisions of this Agreement for any other reason than stated in the Agreement, [Spartak] has to compensate [Desly] for loss of profit equal to gross profit from previous year.

Id. § 11.2.

Finally, section 15 establishes that the agreement was covered by New York law, and that

it could only be modified "by a writing signed by a duly authorized representative of each of the

parties." Id. §§ 15.2 & 15.3. Then, in a similar vein, the parties provided in section 15.4

definition for the scope of their intended relationship:

> It is expressly agreed that [Spartak] and [Desly] are acting hereunder as independent contractors and under no circumstances shall any of the employees of one party be deemed the employees of the other for any purpose. This Agreement shall not be constructed as authority for either party to act for the other party in any agency or other capacity or to make commitments of any kind for the account of or on behalf of the other except to the extent and for the purpose provided for herein. [Desly] agrees that it is not a partner, broker, employee or franchise of [Spartak].

Id. § 15.4.

By all appearances, Desly and Spartak's business relationship proceeded uneventfully

until July 10, 2012, when Spartak decided to file applications for the Spartak mark and logo in

English and Russian with the United States Patent and Trademark Office ("USPTO"). Def. R.

56.1 Stmt. ¶ 47. On November 21, 2012, to Spartak's surprise, USPTO rejected its applications

because registration for the Spartak mark and logo had already been filed three years earlier – by

Desly. Id. ¶ 50. Spartak, claiming not to have been aware of, let alone acquiesced in, Desly's

trademark offending applications, notified Desly of its discovery and summarily terminated the

exclusive agreement. Id. ¶ 51. In response, Desly sent a letter to Spartak, claiming that its

trademark applications were submitted "in a scope of good business practice routinely conducted

by [Desly] in order to protect intellectual property being used in connection with goods being

distributed on territories where [Desly] holds exclusive distribution rights." Id. ¶ 54; Desly

Letter, Dkt. No. 81-16. In addition, Desly proposed a conversation regarding the "possible

transfer of rights [to Spartak] to the intellectual property currently owned by Desly," i.e., the

Spartak mark and logo. Id.

Predictably, this feint at rapprochement failed to resolve the spat. In fact, by December 19, 2012, Spartak had already moved on to a new exclusive distribution agreement with Euro Bel. Pl. R. 56.1 Stmt. ¶ 15. The following month, Desly fired its own volley by recording its registration rights to the Spartak mark and logo with United States Customs and Border Protection and then, in reliance on these registrations, threatened to sue Spartak and Euro Bel if they continued to engage in the shipment, importation, and distribution of Spartak's goods in the United States. Def. R. 56.1 Stmt. ¶¶ 55-56. When Spartak and Euro Bel defied Desly's ultimatum, Desly made good on its threats by filing this lawsuit. The courtroom was not the war's only front. Despite Spartak's termination of the exclusive agreement, Desly continued to distribute certain confectionary Spartak products and to operate a website it had created under the domain name "spartakusa.com." See Pl. Answer to Euro Bel, Dkt. No. 39, ¶ 21.

Desly has not disputed any of these facts. It does assert, however, that these facts do not tell the whole story. Central to its narrative is Novikov, who Desly describes as a key figure in Spartak's revival after the collapse of the communist economy in the former Soviet Bloc states. See Pl. R. 56.1 Ctr. Stmt., Dkt. No. 90, ¶¶ 1-14. In the early 1990s, as Desly tells it, Novikov took charge of Spartak, securing significant voting power on Spartak's supervisory board and effectively revitalizing the company's European manufacturing and export base. See id. Then, having rebuilt Spartak in Europe, Desly says, Novikov set his sights on the United States. Id. ¶ 15. It was in furtherance of this management plan, the chronicle goes on, that Desly was created. Id. ¶¶ 21-22.

Novikov recalls that the Spartak business plan envisioned that Desly would be involved with the Spartak brand in the United States in a fashion that was more akin to that of a "joint venture" than that of a mere distributor – a fact arguably reflected by Spartak's own website,

which referred to its collaboration with Novikov as an "American-Belarusian joint venture." Id. ¶¶ 16-22. Given the plan, starting in 2001, when Desly began distributing products bearing the Spartak mark and logo, it and other Novikov-owned companies, including Double Star Enterprises and Double Star International, performed essential functions for Spartak's business, such as designing and conveying packaging, purveying key ingredients in the manufacturing supply chain, and creating and registering a website at "spartakusa.com." Id. ¶¶ 26-27. The upshot of this expansive role, Novikov contends, is that, in 2009, Spartak's board gave him oral permission to register the Spartak mark in the United States under Desly's ownership. Id. ¶ 32.[3]

The account Novikov relates takes an even stranger turn. As with many auspicious beginnings, it became clear to him that Desly's partnership with Spartak was doomed by the corrupt post-Soviet politics that began to take hold. Specifically, he notes that, in March 2011, Belarusian president Lukashenko seized control of Spartak through political fiat, dissolving the board and ousting him from his rightful place on the board and in everyday operations. Id. ¶ 42. It is on this additional history that plaintiffs argue with Spartak's purported discovery in July 2012 of Desly's trademark registrations. They argue that Spartak already knew full well of their existence, having orally authorized them in 2009. As a result, the argument continues, the July 2012 letter from Spartak was a mere pretext for its decision to rescind the exclusive agreement with Desly. The real reason for the termination was, they say, Lukashenko's power grab, which this lawsuit was meant to counter. Id.

The dispute, in any event, came to a head on February 28, 2013, when Spartak initiated cancellation proceedings at USPTO to void Desly's trademark registration. Def. R. 56.1 Stmt. ¶

---

[3]     Strikingly, mention of this purported oral permission was noticeably absent from Desly's letter responding to Spartak's purported July 2012 notice of its recent discovery of Desly's registrations. See Desly Letter.

7

57. Those proceedings were stayed pending the outcome of this litigation, which had commenced almost two months later.

## Standard of Review

A district court must grant summary judgment if "there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). A court's responsibility in assessing the merits of a summary judgment motion is not to try issues of fact, but merely to "determine whether there *are* issues of fact to be tried." Sutera v. Schering Corp., 73 F.3d 13, 16 (2d Cir. 1995) (quoting Katz v. Goodyear Tire & Rubber Co., 737 F.2d 238, 244 (2d Cir. 1984)). The moving party bears the burden of demonstrating that there is no genuine issue as to any material fact, see Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005), and the motion court will resolve all ambiguities and draw all permissible factual inferences in favor of the party opposing the motion. See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004); Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996) ("If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.").

If the moving party meets its initial burden of demonstrating the absence of a disputed issue of material fact, the burden shifts to the nonmoving party. See George v. Reisdorf Bros., 410 F. App'x 382, 384 (2d Cir. 2011). The nonmoving party may not rely solely on "conclusory allegations or unsubstantiated speculation" in order to defeat a motion for summary judgment. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Instead, the nonmoving party must "make a showing sufficient to establish the existence of [each] element to that party's case . . . [s]ince a

8

complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322–23. If the evidence favoring the nonmoving party is "merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986) (internal citations omitted).

## Discussion

### A. Ownership of the Spartak Mark and Logo

Although a party's registration of a trademark with USPTO's principal register "shall be prima facie evidence . . . of the registrant's ownership of the mark[,]" 15 U.S.C. § 1115(a), "[a] party does not acquire ownership of a trademark through registration." Excell Consumer Prods. Ltd. v. Smart Candle LLC, No. 11 C 7220 MEA, 2013 WL 4828581, at *21 (S.D.N.Y. Sept. 10, 2013), opinion supplemented on denial of reconsideration, No. 11 C 7220 MEA, 2014 WL 1796657 (S.D.N.Y. May 5, 2014). Pointedly, a trademark application that is not filed by the owner is void. Trademark Man. of Exam. Proc. § 1201.02(b) (17th ed. 2016). Rather, trademark ownership rights attach to the party that first uses the mark in commerce. Blue Planet Software, Inc. v. Games Int'l, LLC, 334 F. Supp. 2d 425, 436–37 (S.D.N.Y. 2004); see also 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 16:18 (4th ed. 2010) (Trademark ownership rights belong to the "first-to-use, not [the] first-to-register."). Such rights "develop when goods bearing the mark are placed in the market and [are] followed by continuous commercial utilization." Buti v. Perosa, S.R.L., 139 F.3d 98, 103 (2d Cir. 1998), cert. denied, 525 U.S. 826, 119 S. Ct. 73, 142 L. Ed. 2d 57 (1998) (internal quotations and citation omitted).[4]

---

[4]     For the sake of clarity, it is worth noting that Spartak's prior registration of the Spartak mark in Russia and Belarus is irrelevant to this analysis. "[U]se of a mark overseas cannot form the basis for a holding of priority trademark use" in the United States. De Beers LV Trademark

9

Consequently, a prima facie case arising from registration with USPTO can be rebutted, and the subject trademark canceled by a showing that the registration was fraudulently obtained, i.e., the applicant knowingly made a false, material misrepresentation of fact in connection with its application. See Tuccillo v. Geisha NYC, LLC, 635 F. Supp. 2d 227, 241 (E.D.N.Y. 2009) ("To prevail on a cause of action for trademark cancellation on grounds of fraud on the [USPTO], it is necessary for the petitioner to demonstrate that the statements (1) were made with knowledge of their falsity, and (2) were material to the determination to grant the application") (citation and internal quotations omitted); see also Maids to Order of Ohio, Inc. v. Maid-to-Order, Inc., 78 U.S.P.Q.2d 1899, 1905 (T.T.A.B. Mar. 31, 2006). A party moving to cancel a trademark based on fraud on the USPTO bears the burden to prove the fraud by "clear and convincing evidence." Orient Exp. Trading Co. v. Federated Dept. Stores, Inc., 842 F.2d 650, 653 (2d Cir. 1988) (citation omitted); Tuccillo, 635 F. Supp. 2d at 241 (citation omitted). This is a "heavy burden of proof," and the trial court has "no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party." In re Bose Corp., 580 F.3d 1240, 1243 (Fed. Cir. 2009) (citation omitted). "Thus, an applicant who has at least 'color of title' to the mark is not guilty of fraud[.]" Yocum v. Covington, 216 U.S.P.Q. 210, 216–17 (T.T.A.B. 1982) (citation omitted). Since direct evidence of deceptive intent is rarely available, subjective intent to deceive can be inferred from indirect and circumstantial evidence. In re Bose Corp., 580 F.3d at 1245; see also Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d

---

Ltd. v. DeBeers Diamond Syndicate, 440 F. Supp. 2d 249, 269 (S.D.N.Y. 2006). Indeed, "[p]rior use of a trademark in a foreign country does not entitle its owner to claim exclusive trademark rights in the United States as against one who used a similar trademark in the U.S. prior to entry of the foreigner into the domestic American market." McCarthy, supra § 29:3. This rule, moreover, applies with equal force to a company that outright copies a mark that has been previously used abroad but that is not famous in the United States. Id. (citing Pers.'s Co. v. Christman, 900 F.2d 1565, 1568-69 (Fed. Cir. 1990)).

10

1357, 1366 (Fed. Cir. 2008), cert. denied, 556 U.S. 1106, 129 S. Ct. 1595, 173 L. Ed. 2d 678

(2009). At the same time, a party alleged to have committed fraud may rely on good faith as a

defense. Maids to Order, 78 U.S.P.Q.2d at 1905. The alleged fraudulent misstatements must be

more than an "error or inadvertence," and instead must show a "deliberate attempt to mislead the

[USPTO]." Orient Exp. Trading Co., 842 F.2d at 653 (citation omitted).

As these trademark law principles make clear, context is critical in trademark dispute

litigation. This dispute has its roots in a distribution arrangement that, unquestionably, existed

between the parties. It must be observed then that, ordinarily, an "exclusive U.S. distributor does

not acquire ownership of a foreign manufacturer's mark any more than a wholesaler can acquire

ownership of an American manufacturer's mark, merely through the sale and distribution of

goods bearing the manufacturer's trademark." Haggar Int'l Corp. v. United Co. for Food Indus.

Corp., 906 F. Supp. 2d 96, 111-12 (E.D.N.Y. 2012) (citing McCarthy, supra, § 29:02). Quite to

the contrary, in such cases, the general rule is that "when disputes arise between a manufacturer

and distributor, courts will look first to any agreement between the parties regarding trademark

rights." Tecnimed SRL v. Kidz-Med, Inc., 763 F. Supp. 2d 395, 403 (S.D.N.Y. 2011) (citing

Sengoku Works v. RMC Int'l, 96 F.3d 1217, 1220 (9th Cir. 1996)), aff'd, 462 F. App'x 31 (2d

Cir. 2012). Indeed, USPTO's Trademark Manual of Examining Procedure ("TMEP") provides

that:

> If an applicant is the United States importer or distribution agent for a foreign
> manufacturer, then the applicant can register the foreign manufacturer's mark in
> the United States, if the applicant submits one of the following: (a) written
> consent from the owner of the mark to registration in the applicant's name, or
> (b) written agreement or acknowledgment between the parties that the importer
> or distributor is the owner of the mark in the United States, or (c) an assignment
> . . . to the applicant of the owner's rights in the mark as to the United States
> together with the business and good will appurtenant thereto.

TMEP § 1201.06(a)); see also Ushodaya Enters., Ltd. v. V.R.S. Int'l, Inc., 63 F. Supp. 2d 329,

335 (S.D.N.Y. 1999).

Illuminated by this practical understanding of precedent, "absent a clear manifestation of intent by a supplier to transfer ownership of a trademark to a distributor, the supplier remains the rightful owner" of a trademark registration. Software AG, Inc. v. Consist Software Solutions, Inc., No. 08 CV 389, 2008 WL 563449, at *17 (S.D.N.Y. Feb. 21, 2008), aff'd, 323 Fed. App'x. 11 (2d Cir. 2009); see also Tactica Int'l, Inc. v. Atlantic Horizon Int'l, Inc., 154 F. Supp. 2d 586, 600 (S.D.N.Y. 2001); Ushodaya, 63 F. Supp. 2d at 336. Generally, indeed dispositively here, "oral permission to register a trademark is not sufficient"; rather, the supplier must "show a 'clear manifestation of intent'" in writing "to transfer ownership of trademark rights" to the distributor. Excell, 2013 WL 4828581, at *22 (citing Haggar, 906 F. Supp. 2d at 111); see also Major-Prodotti Dentari-Societa in Nome Collettivo Di Renaldo Giovanni & Figli v. Shimer, 161 U.S.P.Q. 437, 438 (T.T.A.B. 1968); Omag Optik Und Mechanik A.G. v. Weinstein, 85 F. Supp. 631, 635 (S.D.N.Y. 1949) (noting that the distributor must demonstrate "a clear intention on the part of the manufacturer to transfer the mark to the distributor" before the distributor may lay claim to the benefits of the registration).

Without a writing memorializing a transfer of trademark rights to Novikov and Desly, Desly, as Spartak's American distributor, was without legal authority to represent to USPTO that it was the owner of the Spartak name and logo. Desly's registration of the Spartak mark was, therefore, fraudulent. The uncontested writings and evidence confirm the conclusion. Looking first to the exclusive agreement between Spartak and Desly, as case law requires, Tecnimed, 763 F. Supp. 2d at 403, it is plain that it neither explicitly transferred, nor contemplated transferring, rights in the Spartak mark or logo to Desly. The exclusive agreement could hardly have been more explicit on this front. In the section titled "The Right to Use Trademark and Trade Name,"

12

the agreement states:

> Any and all trademarks and trade names, which [Spartak] uses in connection with the rights granted hereunder, are and remain the exclusive property of [Spartak]. Nothing contained in this Agreement shall be deemed to give [Desly] any right, title or interest in any trademark or trade name of [Spartak] relating to the Products. Subject to notice from [Spartak] in writing, which modifies or cancels such authorization, during the term of this Agreement, [Desly] may use the trademarks and trade names specified by [Spartak] in writing for normal advertising and promotion of Products.

Exclusive Agreement § 2.4. In addition, § 8.2, titled "Property Rights," provides that "all applicable copyrights, trade secrets, patents and other intellectual property rights in the Products and all other items licensed hereunder are and shall remain in [Spartak]." Id. § 8.2.

These terms, broadly-drafted in Spartak's favor, are clear and unambiguous. See Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co., 472 F.3d 33, 42 (2d Cir. 2006) ("Whether a contract is ambiguous . . . is a threshold question of law to be determined by the court.") (citations and internal quotations omitted). Giving the words of the contract their plain meaning, they unquestionably reserve the rights to the Spartak mark and logo solely as Spartak property. The words and their meaning are inescapable. See id. ("When the provisions are unambiguous and understandable, courts are to enforce them as written."). Put bluntly, no matter what else Novikov or Desly may have thought, they had to know that their claim of trademark rights ownership was a breach of the agreement in effect with Spartak at the time Desly registered the trademarks, because the agreement expressly provided that it did not admit to oral modification.

Notwithstanding, Desly, as noted earlier, claims that it registered the Spartak mark and logo only after its founder, Novikov, was given explicit oral permission by Spartak's board of directors to do so. Plaintiffs argue, in effect, that the oral permission given amended and

13

superseded the contrary terms of the exclusive agreement. See Pl. R. 56.1 Ctr. Stmt. ¶ 32. Yet, even assuming that Nikov's flat assertion, unsupported by any other evidence, that he was given such permission by Spartak might otherwise be enough to create a genuine issue of material fact as to its property, which it does not, it still does not come to grips with the body of precedent holding that a transfer of trademark rights from a manufacturer to a distributor must be made *in writing*. See TMEP § 1201.06(a); see also Excell, 2013 WL 4828581, at *22 ("[O]ral permission to register a trademark is *not* sufficient to establish an agreement . . . .") (emphasis added).

It is important not to lose sight of the forest for the trees. Compounding the precedential impediments of trademark law that disable a claim of a transferred trademark right without a specific written authorization, the exclusive agreement makes fatally explicit that only *written* permission from Spartak would allow Desly to obtain ownership of the Spartak mark and logo. See Exclusive Agreement § 2.4 (providing that Desly could only obtain right to Spartak mark and logo "[s]ubject to notice from [Spartak] *in writing*") (emphasis added); see also id. § 15.3 ("This agreement may not be modified except by *a writing* signed by a duly authorized representative of each of the parties.") (emphasis added). Notwithstanding anything else, then, Desly had agreed by contract not to exercise ownership rights to Spartak's mark and logo without Spartak's written permission. Ignoring these words, Desly has failed on these motions to identify any written permission from Spartak. Nor, again, has it produced any other writing supporting the existence of oral permission granted to Desly, such as board minutes or resolutions, attesting to the alleged oral permission that it received from Spartak.[5]

---

[5]    Desly's evidentiary proffer shows that the absence of written support for the transfer of trademark rights is not its only problem. As previewed earlier, plaintiffs rely chiefly on declarations by Marat Novikov. It is, as also noted earlier, well-established that "[s]elf-serving affidavits, sitting alone, are insufficient to create a triable issue of fact and defeat a motion for summary judgment." Jill Stuart (Asia) LLC v. Sanei Int'l Co., No. 12 CIV. 3699 KBF, 2013 WL

The path is clear. Because Desly has "presented no evidence of a written agreement in which [Spartak] transferred or assigned to [Desly] the rights to the [Spartak] brand," its registration was plainly invalid. Haggar, 906 F. Supp. 2d at 113, n.25. In fact, the exclusive agreement makes crystal clear that Desly had no "reasonable basis for believing" that it had "the right to use the mark in commerce . . . ." Maids to Order, 78 U.S.P.Q.2d at 1908. Rather, Spartak's "rights in the mark, vis-a-vis [Desly's] rights, [were] known by [Desly] to be superior or clearly established . . . ." Haggar, 906 F. Supp. 2d at 113 (quoting Maids to Order, 78 U.S.P.Q.2d at 1908). And other than the conclusory assertions, unsupported by any other admissible evidence, that Spartak's board gave Novikov or Desly its trademark rights, there is absolutely no contention, much less any proof, that the exclusive agreement confirming Spartak's complete control over its mark and logo, was ever formally amended in accordance

---

3203893, at *2 (S.D.N.Y. June 17, 2013), aff'd, 566 F. App'x 29 (2d Cir. 2014). Beyond that obstacle, Novikov's deposition testimony makes clear that his children, not he, prepared the declarations based on their loose recollection of his oral statements. See Novikov Dep., Dkt. No. 82-3, at 211:17-213:20. Novikov also could not affirm that he signed his declarations (indeed, the first declaration is "slash signed"). See id.; see also Dkt. No. 9-2, at 14. These facts call into question whether the submitted declarations even comport with the requirements of Rule 56. See Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge . . . ."). Additionally, Klavdia Leonenko, on whose declaration plaintiffs rely for corroboration of Novikov's testimony, was identified as a witness only *after* discovery had closed and after Spartak had filed its motion for summary judgment. Desly has provided no compelling reason for this failure to comply with Rule 26, and, as such, Leonenko's statements cannot properly be considered. See Haas v. Delaware & Hudson Ry. Co., 282 F. App'x 84, 86 (2d Cir. 2008).

Even more damaging is the fact that Desly, lacking *any* written record to corroborate its version of events, is forced to rely entirely on the spotty and inconsistent deposition testimony of Novikov and Alesia Samsonava, a once-Director General at Spartak. In any event, Novikov could not even recall who on the board had approved Desly's registrations and, more important, whether Desly was authorized to register itself as the owner of the Spartak mark and logo. See Novikov Dep., at 156:22-160:4. Similarly, Samsonava failed to recall which board members approved the registrations. Samsonava Dep., Dkt. No. 82-5, at 47:12-48:22. To be succinct, the evidence marshalled by plaintiffs fails utterly to carry their motion much less create a genuine issue of material fact with respect to the motion of defendants.

with its terms. "[Given the] prior agreement of the parties," therefore, Desly's registration application was, unmistakably, fraudulent. Id.

Still, reaching for another arrow in its quiver, Desly asserts – once again, without any documentary evidence – that its entitlement to the Spartak mark and logo should not be evaluated under the "exclusive distributor" rubric because its role extended well beyond that of a "mere distributor" into the integral position of supplier, quality controller, and direct (and first) purveyor of Spartak's products in the United States. Pl. Opp., Dkt. No. 88, at 9-11, 17-18. These contentions, even if they had appropriate and admissible support not open to question, would still be powerless to sway the outcome of this case. It is well-established that an analysis of Desly's role vis-à-vis Spartak is only proper in the *absence* of a clear agreement between the parties, for the purpose of rebutting the presumption that the manufacturer, i.e., Spartak, owns the trademarks. Cf. Tactica, 154 F. Supp. 2d at 600; Tecnimed, 763 F. Supp. 2d at 403. Here, such an analysis is entirely at odds with the proof. As previously noted, the clear and unambiguous language of the contract between Desly and Spartak defines Desly's role solely as that of an "exclusive distributor," see Exclusive Agreement at 1, and which retains in Spartak the sole rights to "[a]ny and all trademarks and trade names." See id. § 2.4. Having freely agreed to these contractual terms, again, not modified by any other proffered writing, Desly lacks any compelling argument, much less proof, as to why these clear words of contract, should be weighed against, let alone be abrogated by, extrinsic evidence. Rather, Desly's claims are fatally checked by the maxim that "[c]onsideration of extrinsic evidence is only permissible where the contract at issue is ambiguous . . . ." Baldwin v. EMI Feist Catalog, Inc., 805 F.3d 18, 31 (2d

Cir. 2015).[6] Desly has not claimed, and could not plausibly claim, that such is the case here.[7]

Viewed from any angle, there can be no genuine dispute about the fact that Desly, as an exclusive distributor bound by the plain terms of the exclusive agreement, was not entitled to register the Spartak mark and logo in the United States under its own name. These trademark rights belonged to, and continue to belong to, Spartak. Summary judgment as to Spartak's claims under the Act must be granted, and plaintiffs' cross-motion is denied. As a consequence, pursuant to 15 U.S.C. §§ 1051(a) and 1119, Desly's unauthorized registrations of the Spartak mark and logo are canceled. See Ushodaya, 63 F. Supp. 2d at 335 ("A district court has the power to order cancelation of a registration pursuant to 15 U.S.C. § 1119.").

Correspondingly, given that Desly has been found to have infringed the Spartak mark and logo, there is also no dispute that Spartak is also entitled to judgment on its derivative claims of false designation of origin under the Lanham Act and unfair competition under New York law. "A claim of false designation of origin under the Lanham Act may be brought against any person who 'uses in commerce . . . any false designation of origin . . . which is likely to cause confusion . . . as to the origin . . . of his or her goods.'" Johnson & Johnson v. Azam Int'l Trading, No. 07 - CV-4302, 2013 WL 4048295, at *9 (E.D.N.Y. Aug. 9, 2013) (citing 15 U.S.C. § 1125(a)(1)(A)). A party asserting a claim under this provision must establish that (1) it owns a valid mark entitled to protection, and (2) that the infringer's use of the mark is likely to cause confusion. Id.

---

[6]     Furthermore, even if these claims were cognizable, many of the roles that Desly purports to have performed were, by its own admission, actually undertaken by third-party entities that are non-parties to both the exclusive agreement and this action. See, e.g., Pl. R. 56.1 Ctr. Stmt. ¶ 14 (describing the provision of raw materials to Spartak by non-party Double Star Enterprises and investment in Spartak by non-party Double Star International). The activities of these separate entities are, plainly, irrelevant to Desly's purported performance.

[7]     On a separate note, because Desly was not operating in good faith when it registered the Spartak mark and logo, its affirmative defense of laches fails. Haggar, 906 F. Supp. 2d at 132.

(citations omitted).

Spartak's ownership of the Spartak mark and logo now having been already been determined, to assess the likelihood of consumer confusion, the hearing court must consider the factors established in <u>Polaroid Corp. v. Polarad Elecs. Corp.</u>, 287 F.2d 492, 495 (2d Cir. 1961). However, where the party claiming ownership of the mark establishes that the alleged infringer intentionally used identical copies of claimant's design for the same product in the same market, consumer confusion is inevitable. <u>Tuccillo</u>, 635 F. Supp. 2d at 244-245. Here, Desly openly admits as much, <u>see</u> Pl. Br. at 14-15, making a fuller analysis superfluous. Summary judgment on Spartak's false designation of origin claim is, therefore, granted.

Additionally, a New York common law claim for unfair competition closely resembles a false designation of origin claim with the further requirement of a showing of bad faith. <u>Johnson & Johnson</u>, 2013 WL 4048295, at *11 (citing <u>Girl Scouts of U.S. of Am. v. Bantam Doubleday Dell Pub. Grp., Inc.</u>, 808 F. Supp. 1112, 1131 (S.D.N.Y. 1992), aff'd sub nom., <u>Girl Scouts of U.S. v. Bantam Doubleday Dell Pub. Grp., Inc.</u>, 996 F.2d 1477 (2d Cir. 1993)). Having established, with no material fact in genuine dispute, that Desly acted in bad faith by fraudulently registering the Spartak mark and logo in violation of both the exclusive agreement and trademark law, summary judgment on this claim is also granted for Spartak. <u>See</u> <u>Big Vision Private Ltd. v. E.I. du Pont de Nemours & Co.</u>, 610 F. App'x 69, 71 (2d Cir. 2015) (discussing how breach of contract, while not necessary to a finding of bad faith, is indicative of bad faith); <u>De Beers</u>, 440 F. Supp. 2d at 278 ("[Defendant]'s decisions to apply for his own registrations, . . . were done entirely in bad faith.").

All that remains is Spartak's dilution claim under N.Y.G.B.L. § 360-1. To prevail on this claim, Spartak must have demonstrated ownership of a distinctive mark, and a likelihood of

18

dilution resulting from Desly's actions, i.e. "the possibility that the [Spartak mark and logo] will lose [their] ability to serve as unique identifier[s] of [Spartak's] product." Deere & Co. v. MTD Products, Inc., 41 F.3d 39, 43 (2d Cir. 1994); see also Perfect Pearl Co. v. Majestic Pearl & Stone, Inc., 887 F. Supp. 2d 519, 543 (S.D.N.Y. 2012) (citing The Sports Auth., Inc. v. Prime Hosp. Corp., 89 F.3d 955, 965-66 (2d Cir. 1996)). Obviously, given the findings above, Spartak's ownership of the Spartak mark and logo can no longer be questioned. Desly's efforts to expropriate the subject marks and to blur the distinction between itself and Spartak through, for example, its unauthorized website spartakusa.com, plainly jeopardized the exclusive identification of the Spartak mark and logo with Spartak. Here, too, judgment on the motion for Spartak is mandated.

## B. Breach of Contract Claims

Both Desly and Spartak assert claims for breach of contract – Spartak interposes a claim of breach based on Desly's fraudulent registrations, and Desly advances Spartak's wrongful termination of the exclusive agreement. Yet, it is a well-settled principle of contract law that, where a party materially breaches an agreement, the non-breaching party is entitled to terminate the breached contract and sue for the entire loss the breach caused. See Giuffre Hyundai, Ltd. v. Hyundai Motor Am., 756 F.3d 204, 209-10 (2d Cir. 2014) (affirming summary judgment for party that terminated contract with counterparty that had committed "an incurable, material breach"); Jordan v. Can You Imagine, Inc., 485 F. Supp. 2d 493, 498 (S.D.N.Y. 2007) (citing ARP Films, Inc. v. Marvel Entm't Grp., Inc., 952 F.2d 643 (2d Cir. 1991)); see also Southland Corp. v. Froelich, 41 F. Supp. 2d 227, 246 (E.D.N.Y. 1999). Material breach of a contract occurs when the breach "goes to the root of the agreement and is so substantial that it defeats the purpose of the contract." Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.,

No. 01 CIV. 3796, 2005 WL 447377, at *14 (S.D.N.Y. Feb. 24, 2005); see also Jordan, 485 F.
Supp. 2d at 498 (citing New Windsor Volunteer Ambulance Corps, Inc. v. Meyers, 442 F.3d 101
(2d Cir. 2006)); Southland, 41 F. Supp. 2d at 246; 23 Williston on Contracts § 63:3 (4th ed.
2006).

Desly's fraudulent registrations, without a shadow of a doubt, breached the distribution
agreement. See Section A, supra. Desly, contends that any breach was immaterial. Relying on
section 11.2 of the distribution agreement, titled "Owner Termination," Desly argues that
Spartak was within its right to terminate the agreement only upon the happening of certain
events, none of which applied to Desly's improper registrations. See Exclusive Agreement §
11.2. The clause Desly spotlights states that "[t]his Agreement *may* be terminated immediately
by [Spartak] under any of the following conditions." Id. (emphasis added). The argument is
meritless. "Unless a contract provision for termination for breach is in terms exclusive, it is a
cumulative remedy and does not bar the ordinary remedy of termination for a breach which is
material, or which goes to the root of the matter or essence of the contract." Southland Corp. v.
Mir, 748 F. Supp. 969, 983 (E.D.N.Y. 1990) (quoting Olin Corp. v. Central Indus., Inc., 576 F.2d
642, 647 (5th Cir. 1978)) (internal quotations omitted). Desly's attempt to read the contract to
bar access to common law remedies for contract breach is unavailing.[8]

What is inescapable is that Desly's improper trademark registrations constituted a
material breach justifying Spartak's termination of the agreement granting Desly distribution

---

[8]     Nor is it fruitful for Desly to argue that Spartak forfeited its claim of breach by
continuing to perform under the distribution agreement. As previously discussed, see Section A,
supra, Desly has submitted no evidence demonstrating Spartak's knowledge of its registrations.
Indeed, the only record evidence of Spartak's actual awareness of Desly's registrations came
when Spartak's own registrations were officially rejected by USPTO on November 2, 2012 – an
event that occurred less than one month before Spartak terminated the exclusive agreement.

rights in the United States. The central purpose of the contract, it is beyond dispute, was to make

Desly Spartak's exclusive United States distributor of its products for sale, principally, to Eastern

European immigrant consumers already familiar with Spartak, and, not only did not authorize

Desly to do anything else with its products, mark and logo, but explicitly provided for the

retention of rights to its mark and logo. Thus, by appropriating Spartak's trademark rights and

continuing to distribute product under a mark it had unlawfully registered, though still bearing

the distinctive dress and logo that these products bore – which would be recognizable to

preexisting consumers – Desly had breached the essential purpose of the distribution agreement.

The contract breach by plaintiffs could not have been more material; illicitly arrogating the

Spartak mark and logo to itself, Desly severed from Spartak the essential tools for establishing its

brand in this country, which was, of course, the key purpose of the exclusive agreement. Such a

breach, as a matter of law, entitled Spartak to terminate the agreement. See Southland, 41 F.

Supp 2d at 244 (finding franchisee's trademark infringement constituted material breach entitling

franchisor to terminate without opportunity to cure).[9] For these reasons, summary judgment is

awarded to Spartak on its breach of contract claim against Desly. Conversely, Desly's cross

motion for breach against Spartak is denied.

---

[9]     This conclusion is buttressed by the understanding that, "[i]n every contract there is an
implied covenant of good faith and fair dealing which precludes each party from engaging in
conduct that will deprive the other party of the benefits of their agreement." Filner v. Shapiro,
633 F.2d 139, 143 (2d Cir. 1980) (citing Kirke LaShelle Co. v. Paul Armstrong Co., 263 N.Y.
79, 87, 188 N.E. 163, 167 (1933)). And, under well-established principles of New York law, "a
contract may be terminated without notice and opportunity to cure where there is sufficient
evidence of fraud . . . ." 7-Eleven, Inc. v. Khan, 977 F. Supp. 2d 214, 230 (E.D.N.Y. 2013)
(citing Southland, 41 F. Supp 2d at 247). Accordingly, Desly's fraudulent registrations
constitute a separate and independent ground for Spartak's termination of the exclusive
agreement.

## C. Trade Dress Infringement

Having failed to raise a claim of trade dress infringement in its complaint or move to amend the complaint to include it, Desly has not properly interposed this claim, and it would ordinarily not be considered. See Greenidge v. Allstate Ins. Co., 446 F.3d 356, 361 (2d Cir. 2006) (holding that district court did not abuse its discretion in dismissing a claim that was neither pleaded in the complaint nor the subject of a timely motion to amend the complaint). This claim, however, is an obvious tag-along to Desly and Novikov's claim that it had a right to register and *use* the Spartak mark and logo, which is precisely what plaintiffs did. Having found that plaintiffs did *not* have the right to use the Spartak mark and logo they did use, and that such rights were retained by Spartak, it is plaintiffs' use of the Spartak trade dress that infringes – not the other way around. Plaintiffs' trade dress claim is, therefore, considered and is dismissed as wholly lacking in merit.

### Conclusion

For the foregoing reasons, plaintiffs' motion for summary judgment is denied and Spartak's motion is granted as to the issues for which judgment was sought.

Counsel for plaintiffs, Spartak and Euro Import are directed to contact United States Magistrate Judge Lois Bloom expeditiously to arrange for the scheduling of a conference leading to the entry of a final joint pretrial order and the scheduling of trial on the remaining issues of tortious interference with contract, unfair competition and damages.

So Ordered.

Dated: Brooklyn, New York
      August 15, 2016

/s/ USDJ ERIC N. VITALIANO

ERIC N. VITALIANO
United States District Judge