FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

☆ DEC 07 2018 ☆

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
DESLY INTERNATIONAL CORPORATION,
MARAT NOVIKOV, OLGA NOVIKOV, and
ANDREY NOVIKOV,

                             Plaintiffs,

          -against-

OTKRYTOE AKTSIONERNOE
OBSHCHESTVO "SPARTAK" *also known as
Sovmestnoe Predpriyatie Otkrytoe, also known as
Aktsionernoe Obshchestvo "Spartak,"*
EURO IMPORT DISTRIBUTIONS, INC.,
EURO IMPORT BEL, LLC, and EURO
IMPORT, INC.,

                             Defendants.
------------------------------------------------------------- x

MEMORANDUM & ORDER

13-CV-2303 (ENV)(LB)

VITALIANO, D.J.

      Plaintiffs Desly International Corporation ("Desly"), Marat Novikov, Olga Novikov, and Andrey Novikov brought this action against defendants Otkrytoe Aktsionernoe Obshchestvo "Spartak" ("Spartak"); Euro Import Distributions, Inc.; Euro Import Bel, LLC; and Euro Import, Inc.; advancing claims for trademark infringement, unfair competition, and false designation of origin under the Lanham Act, as well as related claims under New York law. Defendants brought numerous counterclaims against plaintiffs, and the case proceeded to partial summary judgment and then to trial. When the fog of litigation cleared, the parties, collectively, faced a mixed verdict.[1]

---

[1] *See* note 2, *infra*, and section on Background.



1

But, the battle was not yet done. On January 12, 2018, Spartak filed a motion for attorney's fees, which the Court referred to Magistrate Judge Lois Bloom for report and recommendation. Mot. for Att. Fees, Dkt. 194; Mar. 28, 2018 Referral Order. In the Report and Recommendation dated August 1, 2018 ("R&R"), Judge Bloom recommended that Spartak's motion for attorney's fees be granted as to attorney's fees and costs and denied as to post-judgment interest. See R&R, Dkt. 202.

For the reasons stated below, the R&R is modified and Spartak's motion for attorney's fees is denied in the entirety.

## Background

Familiarity with the essential facts and procedural history is presumed, but, to provide context for the Court's evaluation of Judge Bloom's R&R, an abbreviated history is recounted here.[2]

In 2001, Spartak, a Belarusian manufacturer of confectionary goods, entered into a non-exclusive distribution agreement with Desly, a New York corporation, giving Desly the right to distribute Spartak's products in the United States. Summ. J. Order at 2-3. In 2006, Spartak and Desly built on their relationship by entering into a 25-year Exclusive Distributor Agreement (the "Agreement"), which reserved Spartak's rights to its trademarks and trade names. Id. at 3;

---

[2] The facts are drawn from the R&R, the Court's Memorandum and Order as to summary judgment dated August 29, 2016 ("Summary Judgment Order"), dkt. 104, and the Court's trial findings of fact and conclusions of law set forth, pursuant to Rule 52(a), in its order dated October 28, 2017 ("Post-Trial Order"), dkt. 192. See Desly Int'l Corp. v. Otkrytoe Aktsionernoe Obshchestvo "Spartak", No. 13-CV-2303 (ENV)(LB), 2016 WL 4532113 (E.D.N.Y. Aug. 29, 2016); Desly Int'l Corp., 2017 WL 5157614 (E.D.N.Y. Oct. 28, 2017).

Agreement § 2.4, Dkt. 81-12. Although the Agreement permitted Desly to use the Spartak mark and logo on its packaging as part of normal advertising and promotion, it also memorialized the parties' understanding that none of Spartak's intellectual property rights were being transferred to Desly, and that the Agreement could only be modified in writing. Agreement §§ 2.4, 8.2, 15.3; Summ. J. Order at 3-5. In 2009, Desly, without seeking formal modification of the Agreement, registered Spartak's trademark and logo on its own with the United States Patent and Trademark Office ("USPTO") and began selling products, including non-Spartak delivered goods, under the Spartak mark in the United States. Summ. J. Order at 5; Post-Trial Order at 4. In November 2012, after attempting, apparently without notice to Desly, to register its marks with USPTO, Spartak was informed that its applications were denied in light of Desly's prior registrations. Summ. J. Order at 5. Spartak notified Desly of this development and terminated the Agreement. *Id.* In response, Desly proposed a transfer of Spartak's intellectual property rights to it, arguing that the registrations were a routine business practice not at odds with their business relationship at the time. *Id.* When Spartak sought to cancel Desly's registrations, Desly initiated this lawsuit and Spartak responded with counterclaims. *Id.* at 7-8.

As the background history of the business relationship of the parties just recounted suggests, and the prior orders at summary judgment and post-trial made plain, there is far more to the story of Desly's trademark infringement than first meets the eye. Desly most certainly did breach the Agreement by unilaterally registering Spartak's marks in its own name, but Desly's "side business", the supposed motivation for Spartak's post-registration huff, was, in fact, known to Spartak management for years. Summ. J. Order at 7; Post-Trial Order at 4-5. Marat Novikov, a member of Spartak's supervisory board, specifically co-founded Desly in 2001 in order to expand Spartak's reach into the American market, envisioning a relationship between the two

3

entities along the lines of an "American-Belarusian joint venture" rather than an arms-length distribution arrangement. Summ. J. Order at 6-7. According to Novikov, he received oral permission from the Spartak board in 2009 to register Spartak marks in the United States in Desly's name. Summ. J. Order at 7; Post-Trial Order at 5. Alesia Samsonava, general director of Spartak from 2008 to 2012, also so testified at trial, indicating that she knew that Desly was distributing its expanded line of products in the United States under the Spartak mark. Post-Trial Order at 5. While Desly was not authorized in writing to use the Spartak mark in this manner and "despite the open and unhidden nature of Desly's side business . . ., no representative of Spartak ever advised anyone at Desly not to sell the accused products or complained to Desly about such sale" until the events immediately preceding this litigation in late 2012 and early 2013. Id. Nonetheless, absent written modification of the Agreement to formalize the reality of the marketplace, Desly's registration of the Spartak mark and logo with USPTO unquestionably breached the Agreement and made its registration fraudulent and unlawful—hence, Spartak's victory at summary judgment. The formalities of the Lanham Act and the realities of the informal joint venture marketplace had been cleaved.

Other events occurring during this period add further and important context to the dispute. In 2012, after Belarusian President Alexander Lukashenko "seized control of the Spartak factory", Novikov was removed from Spartak's board. Post-Trial Order at 7. Lukashenko "'Putinized' Spartak, purged its corporate structure, turned it over to an oligarch and took steps to disrupt its existing business relationships." Id. Following this change in control, and "[n]otwithstanding the hand in glove relationship that Desly and Spartak had had in prior years, the new broom would sweep clean", with "Desly's misconduct in registering on its own the Spartak mark . . . provid[ing] the new Spartak team with the contractual right to terminate the

4

exclusive agreement." *Id.*

The intensity of the dispute would be mirrored in the conduct of the litigation it spawned. Procedurally, this matter has been actively litigated by both sides, from a temporary restraining order and expedited discovery, to the respective motions for summary judgment, and finally, trial. The Court denied Desly's summary judgment motion and granted Spartak's motion as to its counterclaims under the Lanham Act and state law. The parties proceeded to trial on Spartak's counterclaims for tortious interference with contract, unfair competition, and damages. *See* Summ. J. Order at 22. After a bench trial, the Court determined that Spartak was not entitled to an award of profits but permanently enjoined Desly from using Spartak's marks in the future. Post-Trial Order at 19. Spartak subsequently filed the instant motion, seeking attorney's fees pursuant to the Lanham Act and the Agreement.

Upon referral of that motion, Magistrate Judge Bloom found that Spartak is a "prevailing party" entitled to attorney's fees under the Lanham Act. R&R at 10. Moreover, she determined this to be one of those "exceptional" cases where fees are warranted under § 35 of the Lanham Act, because Desly's bad-faith conduct exemplified "exactly the sort of litigation the Lanham Act attorney's fees provision was designed to deter." *Id.* at 14. Then considering the attorney's fees proposed by Spartak, Judge Bloom observed that the requested hourly rates exceeded those typical of this District, and that Spartak's counsel had miscalculated some of its invoices and submitted others in Russian without translation. She, therefore, recommended a 20% reduction in the requested fees, and recommended an award of $420,517.96, with the individual plaintiffs to be held jointly and severally liable. *Id.* at 9 n.6, 21. Although Spartak's counsel did not calculate its costs, Judge Bloom recommended an award of $25,733.53 based on her review of the billing records. *Id.* at 22. Finally, Judge Bloom recommended that no post-judgment interest

5

be awarded under 28 U.S.C. § 1961, because Spartak failed "to provide any case law support for an award of post-judgment interest on attorney's fees awarded to a prevailing party in a Lanham Act case." *Id*.

Desly and Spartak have each objected to the R&R. Desly argues that Spartak is not entitled to attorney's fees, because § 38 of the Lanham Act permits such awards "only where 'an absolutely false registration was fraudulently obtained solely for the purpose of instituting completely vexatious litigation."[3] Desly Objection at 2 (emphasis and citation omitted), Dkt. 204. Emphasizing that it registered the Spartak marks "to protect the Spartak brand", as understood by the practices of the parties, Desly insists that "Spartak's refusal [to transfer its trademark rights] led to this Action." *Id.* at 3. Desly further contends that the individual plaintiffs should not be liable for any fees, because the Court granted their post-trial motions for judgment as a matter of law on the ground that Spartak did not establish they were the "active and conscious force" behind Desly's infringement. *Id.* at 4. In addition, Desly objects to the recommended fee amount as "clearly excessive" and requests denial of costs given Spartak's failure to document them. *Id.* at 7-8.

Spartak, in turn, does not object to the amounts recommended, but asserts that an award of attorney's fees is "also supported" by provisions in the Agreement "which were not considered" in the R&R. Spartak Objection at 1, Dkt. 205. Spartak also seeks post-judgment interest. *Id.* at 2-4.

---

[3] Although the R&R recommends an award of attorney's fees pursuant to § 35, Desly's objection focuses on § 38. *See infra* note 4.

6

## Standard of Review

In reviewing the report and recommendation of a magistrate judge, a district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). In conducting its review, the district court "need only satisfy itself that there is no clear error on the face of the record" to accept a magistrate judge's report and recommendation, provided no timely objection has been made. *Urena v. New York*, 160 F. Supp. 2d 606, 609-10 (S.D.N.Y. 2001) (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)); *see also Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985). The district judge, moreover, is required to "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 116 (2d Cir. 2010). But, objections that are general, conclusory, or "merely recite the same arguments presented to the magistrate judge" do not constitute proper objections and are, thus, reviewed for clear error. *Sanders v. City of New York*, No. 12-CV-113 (PKC)(LB), 2015 WL 1469506, at *1 (E.D.N.Y. Mar. 30, 2015) (citation omitted). In the same fashion, *de novo* review of an argument not presented to the magistrate judge is waived. *See, e.g., Fairfield Fin. Mortg. Grp., Inc. v. Luca*, No. 06-CV-5962 (JS)(WDW), 2011 WL 3625589, at *2 (E.D.N.Y. Aug. 16, 2011); *Kennedy v. Adamo*, No. 02-CV-1776 (ENV)(RML), 2006 WL 3704784, at *1 (E.D.N.Y. Sept. 1, 2006); *Wesley v. Alexander*, No. 99-CV-2168 (LAK), 2005 WL 1352593, at *6 (S.D.N.Y. June 8, 2005); *Haynes v. Quality Market*, No. 02-CV-250, 2003 WL 23610575, at *3 (E.D.N.Y. Sept. 22, 2003); *accord*

*Ridenour v. Boehringer Ingelheim Pharm., Inc.*, 679 F.3d 1062, 1067 (8th Cir. 2012); *Fireman's Ins. Co. v. Todesca Equip. Co., Inc.*, 310 F.3d 32, 38 (1st Cir. 2002).

Discussion

I.  Desly's Objections

Desly argues that an award of attorney's fees is not justified, as the R&R improperly relied on the Court's prior finding of bad faith in connection with Desly's false registration of the Spartak mark and logo. Desly Objection at 1-2. According to Desly, its "purpose in obtaining the trademark registrations in the U.S. was to protect the Spartak brand that was being used in connection with the goods sold by Desly as Spartak's exclusive U.S. distributor," and it only filed suit "after it was apparent that Spartak was using Desly's improper trademark filings as a pretext to terminate the parties' exclusive distribution agreement so that the Belarusian government could take over." *Id.* at 3-4.

Desly's lead-off argument sends the batter to the wrong base. It argues that fees are not warranted under § 38 of the Lanham Act, which authorizes damages for false registration claims, because it did not register Spartak's marks with the intent to initiate "vexatious litigation". Desly Objection at 2 (citing 15 U.S.C. § 1120). However, the R&R did not recommend fees pursuant to § 38—it recommended fees pursuant to § 35, which authorizes fee awards to prevailing Lanham Act claimants in "exceptional cases" where "*any right*" under the Lanham Act has been violated. R&R at 12 (citing 15 U.S.C. § 1117(a)) (emphasis in R&R). Applying § 35, Judge Bloom found that, since Desly lost on summary judgment, Spartak was a prevailing party with regard to all of its Lanham Act claims (as well as Desly's), including claims for trademark infringement and false designation of origin. *Id.* In that regard, moreover, it is certainly beyond contest that § 35's attorney's fees clause applies to such claims. *See, e.g., Centaur Commc'ns,*

*Ltd. v. A/S/M Commc'ns, Inc.*, 830 F.2d 1217, 1229 (2d Cir. 1987) (§ 35 applies to false designation of origin and infringement claims), *superseded on other grounds as recognized by Paddington Corp. v. Attiki Imps. & Distribs., Inc.*, 996 F.2d 577, 585 (2d Cir. 1993). Thus, Desly's § 38 argument is misplaced.[4]

Nevertheless, because § 35 limits attorney's fees to "exceptional" cases demonstrating fraud, bad faith, or willful infringement, Desly raises a compelling objection concerning whether the demanding standard embraced by § 35 has been met. *See Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 221 (2d Cir. 2003). As the Second Circuit recently determined, the standard for "exceptional" Patent Act cases articulated by the Supreme Court in *Octane Fitness*

---

[4] Desly's § 38 argument relies on *Blue Bell Inc. v. Jaymar-Ruby, Inc.*, in which the Second Circuit held that § 38's authorization of damages for false registration claims does not include attorney's fees, but that a court may award fees on equitable grounds "where an absolutely false registration was fraudulently obtained solely for the purpose of instituting completely vexatious litigation." 497 F.2d 433, 439 (2d Cir. 1974). The year after *Blue Bell*, Congress amended § 35 to add its attorney's fees clause. *See* 15 U.S.C. § 1117(a), *amended by* Pub. L. 93-600, 88 Stat. 1955 (1975). It did not add a similar clause to § 38. Thus, while the Second Circuit has not addressed, post-amendment, whether attorney's fees on false registration claims remain available only as set forth in *Blue Bell*, district courts have assumed so and looked to other circuits' discussions on this issue as instructive. *See, e.g., Havana Club Holding, S.A. v. Galleon*, No. 96-CV-9655 (SAS), 1998 WL 150983, at *2 n.7 (S.D.N.Y. Mar. 31, 1998) ("As the Seventh Circuit has observed, an 'extremely tenuous conjecture' is required to conclude from [the § 35 amendment] that *Blue Bell*, a case addressing section 38, has been legislatively overruled.") (citation omitted); *Barbarian Rugby Wear, Inc. v. PRL USA Holdings, Inc.*, No. 06-CV-2652 (JGK), 2009 WL 884515, at *5 (S.D.N.Y. Mar. 31, 2009) (collecting post-amendment cases relying on *Blue Bell* to deny attorney's fees under § 38). Regardless, because Spartak was a "prevailing party" on Lanham Act claims that may give rise to an award of attorney's fees under § 35, *Blue Bell* does not preclude an award; § 35 and § 38 are distinct provisions that must be applied accordingly. *See Orient Express Trading Co. v. Federated Dep't Stores, Inc.*, No. 84-CV-5964 (CBM), 1987 WL 12817, at *3 (S.D.N.Y. June 17, 1987) (vacating § 38 award but maintaining § 35 award). Furthermore, Desly identifies no cases in this circuit importing the "vexatious litigation" standard to § 35, and the Court is aware of none.

*LLC v. ICON Health & Fitness Inc.*, 572 U.S. 545, 134 S. Ct. 1749, 188 L. Ed. 2d 816 (2014), also applies to Lanham Act cases. *See Sleepy's LLC v. Select Comfort Wholesale Corp.*, No. 15-3560, 2018 WL 6174650, at *9 (2d Cir. Nov. 27, 2018) (joining Third, Fourth, Fifth, Sixth, Ninth, and Federal Circuits). Under *Octane Fitness*, an exceptional case is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." 572 U.S. at 554 (construing "exceptional" according to its ordinary meaning). While there is no hard and fast rule, the district court may exercise its discretion on a case-by-case basis, taking into account the totality of the circumstances. *Id.* The court may consider various factors including, but not limited to, "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994)).

The R&R concludes that this is "exactly the sort of litigation the Lanham Act's attorney's fees provision was designed to deter", referencing Desly's breach of the Agreement, filing of this lawsuit, and subsequent litigation strategy. R&R at 14. This conclusion rests on a characterization of the record as "replete with examples of Desly's bad faith." *Id.* A narrow focus on the record at summary judgment, where Spartak prevailed, might support such a characterization. A panorama view of the entire litigation, particularly the testimony and documents adduced at trial, in the Court's view, mandates a markedly different assessment.

Understandably, Judge Bloom sought to credit the Court's finding at summary judgment that Desly's registration application was fraudulent, resulting in the cancellation of its

registration of the Spartak marks. Summ. J. Order at 16-17. Such conduct in the teeth of the Agreement, which provided to the contrary, certainly fits generally into the category of "bad faith." But, limiting focus to these facts alone in determining whether Desly's "bad faith" conduct was "exceptional" would lead to a gross misperception of the record. The broader context of the parties' business arrangement at the time of Desly's false registration of the Spartak marks and the fact that Spartak ultimately received no damages due to an absence of willfulness on Desly's part tell a very different tale. *See* Post-Trial Order at 14-17. Bad faith is a necessary but insufficient condition for an award of fees, which are not mandatory under § 35. *See Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-CV-442 (DLC), 2016 WL 1328936, at *2 (S.D.N.Y. Apr. 5, 2016), *aff'd*, 679 F. App'x 33 (2d Cir. 2017).

Considering the factors delineated in *Octane Fitness*, the Court concludes that the instant matter does not stand out from others in a way that qualifies it as "exceptional." Furthermore, the "bad faith" inherent in the breach of a written contract the Court found Desly exhibited when it falsely registered Spartak's marks, and its litigation strategy in dealing with the oligarch-dominated Spartak board searching for a reason to oust Desly, as the facts established at trial, comes nowhere near the egregious and willful misconduct and trial stratagem used by Lanham Act defendants against whom § 35 attorney's fees have been awarded. *See, e.g., New Sensor Corp. v. CE Distribution LLC*, 367 F. Supp. 2d 283, 287 (E.D.N.Y. 2005) ("Plaintiff's pursuit of patently frivolous claims is circumstantial evidence of bad faith."); *Viola Sportswear, Inc. v. Mimun*, 574 F. Supp. 619, 620-21 (E.D.N.Y. 1983) (plaintiffs failed "to make any investigation of the facts prior to filing the complaint", alleging a "nationwide" trademark conspiracy based on "one pair of jeans" worth $10); *Diamond Supply Co. v. Prudential Paper Prod. Co.*, 589 F. Supp. 470, 476 (S.D.N.Y. 1984) ("baseless" action asserted for harassing purpose); *Patsy's*

*Brand, Inc.*, 317 F.3d at 222 (fraudulent conduct during litigation supported fee award); *River Light V, L.P. v. Lin & J Int'l, Inc.*, No. 13-CV-3669 (DLC), 2015 WL 3916271, at *10 (S.D.N.Y. June 25, 2015) (defendants engaged in fraud, spoliation, and "repeated instances of perjury" and filed "spurious counterclaims", thereby "substantially delay[ing]" litigation and "driving up discovery costs"); *Romeo & Juliette Laser Hair Removal, Inc.*, 2016 WL 1328936, at *3 (defendant's "bad faith litigation tactics" included falsely denying making derogatory internet posts about plaintiff, requiring plaintiff to undertake burdensome third-party discovery to prevail on summary judgment).

Accordingly, since the Court finds that Desly's conduct "has not been sufficiently egregious to justify the award of attorney's fees," the Court declines to adopt the recommendation that such fees be awarded. *See Church & Dwight Co. v. SPD Swiss Precision Diagnostics GmbH*, No. 14-CV-585 (AJN), 2018 WL 4253181, at *18 (S.D.N.Y. Sept. 5, 2018) (denying fee request).

Perforce, Desly's objection to the recommendation that the individual plaintiffs should be jointly and severally liable is sustained, but on the ground that, without the award of fees, the question is moot. *See* Desly Objection at 4-5. Spartak's request for attorney's fees under the Lanham Act is denied, as is its request for costs.[5]

---

[5] The Lanham Act authorizes the award of costs to prevailing parties under § 35, "subject to the principles of equity," without requiring a finding of willfulness. *See* 15 U.S.C. 1117(a). However, in general, a fee applicant "bears the burden of adequately documenting and itemizing the costs requested." *Pennacchio v. Powers*, No. 05-CV-985 (RRM)(RML), 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011). As Desly objects, Spartak did not provide any explanation of its costs, which take the form of vague, individual line items scattered throughout its attorney billing records, unsupported by any documentation of payment to the purported service providers. *See*

II.  Spartak's Objections

Spartak argues that the Agreement provides a contractual basis to award attorney's fees that was not "considered" in the R&R. Spartak Objection at 1. Coming late to the table, Spartak now apparently recognizes the first reason why the R&R did not "consider" this ground: Spartak's failure to provide specification and "case law to support its request that the Court enforce the attorney's fees provision of the Agreement". R&R at 15 n.10. Objections are not intended to give litigants a "second bite at the apple", or, more accurately in this case, a first bite after the fact. *Michaud v. Nippon Cargo Airlines, Co.*, No. 09-CV-3375 (RRM)(CLP), 2011 WL 5402642, at *1 (E.D.N.Y. Nov. 7, 2011) (citation omitted). A district judge may "refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance." *Kennedy v. Adamo*, No. 02-CV-1776 (ENV)(RML), 2006 WL 3704784, at *1 (E.D.N.Y. Sept. 1, 2006) (citation omitted), *aff'd*, 323 F. App'x 34 (2d Cir. 2009); *see also Fischer v. Forrest*, 286 F. Supp. 3d 590, 605 (S.D.N.Y. 2018) ("A proceeding before a magistrate judge is not a meaningless dress rehearsal.") (citation omitted).

In its motion papers, Spartak merely recited the text of the Agreement's attorney's fees provision and the Court's finding that Desly's false registration constituted a breach, without identifying the applicable law or demonstrating that the provision is enforceable thereunder.

---

Desly Objection at 8; Wald Decl., Dkt. 199. Spartak did not even make the effort to calculate its total requested costs. *See* R&R at 22. Spartak's request for costs is, therefore, denied. *See Shalto v. Bay of Bengal Kabob Corp.*, No. 12-CV-920 (KAM)(VMS), 2013 WL 867420, at *2 (E.D.N.Y. Mar. 7, 2013) (denying costs that plaintiff failed to document).

Spartak Mem. at 12-13, Dkt. 196. In its objection, Spartak now seeks to provide this missing case law, arguing that attorney's fees provisions are enforceable under New York law where the intent to shift fees is "unmistakeably clear" from the face of the contract. Spartak Objection at 2. Spartak still fails to establish that the language of the Agreement, strictly construed, meets that standard, and that Spartak constitutes a "prevailing party" despite the fact that it was awarded no damages for the breach. Furthermore, although the attorney's fees provision in the Agreement is limited to the prevailing party in "any action between the parties to enforce any of the terms of this Agreement", Spartak requests attorney's fees incurred in its litigation of the Lanham Act claims up to summary judgment, again failing to demonstrate its entitlement to such fees.[6] Accordingly, this objection is rejected. The R&R without such a finding easily survives "clearly erroneous" review.

Spartak also objects to the denial of post-judgment interest. *See* Spartak Objection at 3. Post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961. Given that neither monetary damages nor attorney's fees have been awarded to Spartak, any question as to post-judgment interest is moot, and, therefore, Spartak's objection is overruled on that basis.

---

[6] Notably, the R&R also finds that Spartak "fell short in meeting its burden" to document the requested attorney's fees, by submitting "foreign-language billing records without translation", providing insufficient "support for the requested hourly rates", and miscalculating "the hours spent and the amount of fees requested". R&R at 21. Nor does it distinguish between the hours spent pursuing its Lanham Act claims as opposed to the breach of contract claims.

14

## Conclusion

In line with the foregoing, the R&R is adopted as modified. Spartak's motion for attorney's fees is, in its entirety, denied.

So Ordered.

Dated: Brooklyn, New York

November 30, 2018

_____
ERIC N. VITALIANO

United States District Judge